## WILLIAM BREWER v. STATE.

No. A-2582. Opinion Filed June 11, 1917.

(165 Pac. 634.)

1.	**APPEAL AND ERROR—Discretion of Trial Court—Application for Continuance.** An application for continuance is addressed to the sound discretion of the trial court, and when such application is based upon the proposition that counsel have had insufficient time to prepare for trial, this court will review the record and consider all of the circumstances in connection with the employment of attorneys from the time the arrest was made; and when it is made to appear that capable lawyers had been employed, and had withdrawn from the case because fees were not paid, and that other capable counsel was employed, and a part of the fee paid some time prior to the calling of the case for trial, and the remainder on the date the same was called for trial, but that no effort had been made to prepare the case for presentation to the jury, a reversal will not be granted on the ground that the court abused its discretion in refusing a continuance for the term, which would amount to a delay of six months.

2.  **APPEAL AND ERROR—Conviction Without Fixing Punishment —Reversal—Modification and Affirmance.** (a) When a person is tried on a charge of murder, and convicted of manslaughter in the first degree, and the jury fails to fix the punishment, this court will review all of the record, with a view of determining the correctness of the findings of the jury, and, if the verdict is a correct and proper one, a reversal will not be granted on the ground that the punishment is excessive.

    (b) When a review of all the record indicates that substantial justice would be conserved by modifying the punishment fixed by the trial court to a lesser term of years than that imposed, this court will make such modification, and affirm the judgment as modified. The entire record, the instructions of the court, and all of the circumstances disclosed, will be considered for the purpose of enabling the court to reach a just conclusion on this phase of the case.

3.  **TRIAL—Time to Prepare Instructions.** Trial courts should give reasonable opportunity for counsel to prepare requests for instructions, and to examine and file exceptions to the instructions given, when, in good faith, counsel seek such opportunity.

*Appeal from District Court, Wagoner County; George C. Crump, Assigned Judge.*

William Brewer was convicted of manslaughter in the first degree, and appeals. Modified and affirmed.

*Joseph S. Dickey, Jr.,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

ARMSTRONG, J.   William Brewer, the plaintiff in error, was tried in the district court of Wagoner county on a charge of murder, and convicted of manslaughter in the first degree. His punishment was fixed by the court at 25 years' imprisonment in the state penitentiary.

The homicide occurred at a hotel conducted by C. Silverhorn at Rex, in Wagoner county, on the night of December 24, 1914. It appears that the people in the community had gathered at the hotel for the purpose of having a Christmas tree celebration; that a dance was in progress in the dance hall; that 14-year-old Red Pell had

been annoying the deceased, whose name was Cartright; that he had been stepping on his feet and spitting on him. That Cartright slapped the boy, who went into another room, crying, and, upon inquiry, he said that he had been slapped by deceased. The plaintiff in error, Brewer, used vile language, and told the boy to tell Cartright to jump on somebody his size. Janie Pell urged the boy to carry the message to Cartright, which he did. Very soon the Pell boy came back from the dance room, and almost immediately Cartright came in, walked by those congregated, turned around, and asked who it was that wanted to clean up on him. All the witnesses for the state testified that Brewer said he could whip him, and struck Cartright simultaneously with the statement.

The plaintiff in error, testifying in his own behalf, denied striking the first blow. He says that Cartright came in and asked, "Where is the fellow that wanted to clean up on me?" and struck him; that he didn't know who Cartright was talking to at the time. In the scuffle that followed, the parties clinched and fell to the floor. Some effort was made to separate them. Cartright was apparently on top of the plaintiff in error, pounding him. Carl Silverhorn, a son of the proprietor of the hotel, pulled the deceased off of the plaintiff in error, whose face was bleeding when he got up. Mrs. Silverhorn, wife of the proprietor, came into the room and was talking to Cartright, and advised him to go back to the kitchen and wash the blood off his face. A shot was fired, and she started to leave. Two more shots were fired. Cartright followed her into the kitchen, and exclaimed that he was shot or killed, and asked that a doctor be called, which was done. He was sent to a hospital at Muskogee, where he died.

The state's witnesses all testified that Cartright was standing not over 10 feet away, talking to Mrs. Silverhorn, at the time he was shot; that the father of the deceased and other persons were endeavoring to control and hold him. The plaintiff in error himself testified that, when he got up, he drew his gun and saw Cartright coming towards him, as if to assault him the second time, and that he shot him. He testified that he knew Cartright was in the habit of carrying a pistol, but did not say that he knew he was armed upon this occasion, or that he made any demonstration as if to use firearms or any other weapon.

The testimony of the plaintiff in error does not disclose a sufficient defense to a charge of murder. Taking his statement as true, this homicide amounted to manslaughter in the first degree. The jury convicted him of that offense, but failed to fix the punishment. A review of the assignments of error and an examination of the record, therefore, will be for the purpose of determining whether or not the conviction of manslaughter should stand.

It is first contended that the court erred in refusing a continuance in this case. The affidavits of the plaintiff in error and his counsel were filed in support of the request for continuance. These affidavits disclose the fact that C. G. Watts, now a district judge, and S. M. Rutherford, of Muskogee, were employed by the plaintiff in error, and after some time they withdrew from the case because their fee was not paid. A short time prior to the trial Joseph S. Dickey, Jr., was employed. One hundred dollars was paid him on the fee, but the remainder was not paid until the day the case was called for trial.

Mr. Dickey had made no effort to prepare for trial, because his fee had not been fully paid. Upon completion of the financial arrangements on the date assigned for trial, a motion for continuance was immediately lodged in the trial court and by the court denied. The cause was assigned for 1:30 in the afternoon, and the trial was begun and. concluded. The record shows that all the witnesses desired by both sides were in attendance upon the court, and no contention is made that additional evidence in the defense of the accused could have been made available. The continuance asked for was for the term, which meant a delay of some six months. The motion for continuance is not based upon any statutory ground, but rather addressed to the sound discretion of the trial court. We are not prepared to say, after a careful review of the record, that the court abused his discretion in refusing to grant a continuance until the next term of court. The entire record is to be considered in this connection.

The cases cited and relied upon by counsel indicate that an injustice probably resulted by reason of the court failing to continue those cases. Not so in the case at bar. The verdict of the jury was just. The punishment inflicted by the court may be too severe, but this court can remedy that. No capable jury of honest men could be assembled who would have found a verdict of less than manslaughter in this case under the proof offered. If a delay had been sought for three or four days, in order to enable counsel to prepare to introduce his testimony, we would feel very much inclined to reverse this judgment. No such request was made of the trial court, and we are therefore not called upon to pass upon a record disclosing that condition.

The remaining assignments of error are based upon criticisms of the instructions of the court. The court's instructions are subject to criticism. If this conviction had been murder, it would be necessary to reverse the judgment, on the ground that the instructions do not fairly submit the law of murder. As abstract propositions of law, the instructions in many respects are correct; but, as applied to the facts in this case, there are a number of criticisms which would not permit a judgment for murder to stand. Rules of law must necessarily be applied to the facts in the case they are intended to cover. No good purpose could be served by setting out the instructions at length and discussing them here.

It is next contended that the court erred in refusing to give counsel an opportunity to prepare written requests for instructions at the close of the testimony. The record discloses the fact that the trial court, on the day before the case closed, advised counsel to have their instructions prepared; that, when the evidence was in and the case closed, defendant asked ten minutes for this work. We think reasonable time should have been granted, but do not find that this is error sufficient to warrant a reversal of the judgment.

Having reviewed all the evidence offered in this case, the instructions of the court, and the proceedings attendant upon the trial, we conclude that this judgment should be modified from 25 to 15 years, and, as modified, affirmed.

It is so ordered.

DOYLE, P. J., and MATSON, J., concur.