## BILL PRESCOTT v. STATE.

No. A-8749.   Nov. 16, 1934.
(37 Pac. [2d] 830.)

260

Earl Boyd Pierce, for plaintiff in error.

J. Berry King, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and Phil K. Oldham, Co. Atty., for the State.

DAVENPORT, J.   The plaintiff in error was by information jointly charged with Maxwell Peak and John Matlock with the crime of murder; was tried separately, convicted, and sentenced to death in the electric chair.

The offense is alleged to have been committed the night of April 28, 1933.   Joe C. Bell, the deceased, was a traveling salesman and lived at McAlester, Okla.; he was on his way home the night he was killed and was near the south line of Muskogee county, on highway 77.   The record shows that the defendant and those charged with him had stolen an automobile for the purpose of using the same in hijacking, and had provided themselves with a red flag to flag parties who might be traveling on the highway.   The defendant and other parties were seen on

the highway a short time before the alleged offense by a man in charge of a filling station, where they were fixing a casing. The defendant was placed in jail at Muskogee, and was later taken to the penitentiary at McAlester for safe-keeping. While in the penitentiary at McAlester, the defendant sent for V. S. Cannon, the sheriff of Muskogee county, and to him, in the presence of J. W. Phillips, made a confession, in which confession the defendant stated the other boys with him were John Matlock and Maxwell Peak; that he flagged the car down and jumped on the running board of the car with a gun pointed at deceased; that it was not his intention to kill him, but in some manner in his excitement he pulled the gun and it went off, and when he shot the first time he shot the second time; that after Bell had been shot they robbed him; that John Matlock got his watch; they went through his pockets and got his money and turned the money over to Matlock. The defendant further stated that the pistol left at the scene of the killing belonged to Matlock.

Witness Cannon stated that later on he had a further conversation with the defendant and that the statements as to the commission of the crime were in substance the same as the first confession but that the words used probably varied some. In the second confession the record shows that the defendant again reiterated the statement that he had fired the shot; that they stopped the deceased for the purpose of robbing him. The defendant said they went to the scene of the robbery and killing in an old Ford car. The record further shows that a day or two prior to the killing deceased was seen driving an old Ford car in and around the city of Muskogee which resembled the car described by the defendant.

The testimony further shows that the day after the killing the deceased was in possession of some car chains,

the same kind of chains the deceased had been using. Several witnesses testified as to the defendant's statements as to his actions prior to and on the night of the killing. No testimony was offered on behalf of the defendant. The record is voluminous, many pages taken up with objections of the defendant's counsel and argument in support of the same, arguments, objections, and statements of the county attorney, and rulings, orders, and statements of the trial judge; a great deal of it having no bearing on the issues joined.

The circumstances surrounding the defendant's actions prior to the night of, and the day after the killing, show that the confession of the defendant at the time it was made was correct as to what had taken place, and the object of holding up the deceased, and as to who fired the shot. The evidence in this case is sufficient if believed by the jury to warrant it in returning a verdict of guilty and imposing the death penalty. The question of the sufficiency of the evidence is for the jury. This court has repeatedly held that conflicting issues of facts are for the sole determination of the jury; that the verdict will not be disturbed if the evidence adduced reasonably tends to support it. Cole v. State, 18 Okla. Cr. 430, 195 Pac. 901; Smith v. State, 18 Okla. Cr. 519, 196 Pac. 734; Adeaholt v. State, 19 Okla. Cr. 122, 198 Pac. 351; Campbell v. State, 23 Okla. Cr. 259, 214 Pac. 738; Mayse v. State, 38 Okla. Cr. 144, 259 Pac. 277; Joe Wisdom v. State, 56 Okla. Cr. 140, 36 Pac. (2d) 514.

Several errors have been assigned by the defendant as grounds for reversal. The only one upon which the defendant has devoted any time in his brief and argument is the first assignment:

"The verdict of the jury and judgment and sentence of the court is contrary to law, in that said verdict is

violative of, repugnant and contrary to sections 7 and 20, of article II, of the Constitution of the state of Oklahoma; and of the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; and that by reason of same said defendant has been deprived of his life without due process of law, in that he was denied the right of counsel, with the accustomed incidents of consultation and opportunity of preparation for trial, and was not given a fair, impartial and deliberate trial as provided by law."

In order to reach a proper decision as to whether or not the defendant in this case was deprived of due process of law, it will be necessary to recite step by step the proceedings from the time the defendant was arrested up to and including his trial and conviction and sentence. It is admitted by the defendant that he had a preliminary trial in conformity with section 2793. O. S. 1931, and that in his preliminary trial he was represented by counsel. If the defendant was denied due process of law, it must have occurred after the defendant was held to bail and during the pendency of the charge against him in the district court. It is shown by the record that when the defendant was arraigned on the information filed against him on the 3d day of November, 1933, the court advised the defendant of his right to have counsel to defend him, and if he was unable to employ counsel, the court would appoint counsel for him. Being assured by the defendant that he was unable to employ counsel, the court appointed Oscar Hudgins, a reputable attorney of the Muskogee bar to represent him.

It is further disclosed by the record that on the day defendant was arraigned the case was set for trial on the 16th day of November, 1933, thirteen days after the defendant had been arraigned and counsel appointed to defend him; that on the 16th day of November, 1933, coun-

sel who had been appointed to represent the defendant appeared in open court and filed a motion for continuance on the ground of the absence of witnesses whose testimony was material to the defense, the attendance of which witnesses he had not had time to secure; that some of the witnesses were nonresidents of the state. Hudgins served notice on the county attorney that he desired to take depositions.

It is further shown that Oscar Hudgins, appointed by the court to defend, advised the court that he desired to withdraw from the case, that defendant had told him he did not care to have him defend him further. The court asked the defendant if he desired Mr. Hudgins to defend him and received a reply from the defendant that he did not. The court then made an order permitting Hudgins to withdraw from the case, and to withdraw his motion filed for a continuance and his notice to take depositions. The court then suggested an appointment of several attorneys, who were members of the bar in Muskogee county, and learned from the attorneys he suggested he would appoint that they were interested in defending or assisting in the defense of the two other defendants who were jointly charged with this defendant, and they could not accept the appointment. The court then appointed Earl Pierce, a reputable member of the bar to defend, and immediately the brothers of the defendant employed Pierce to defend and he accepted the employment.

The record further shows that after Mr. Pierce was employed to defend, he advised the court he was unfamiliar with the facts and that it would be necessary for him to have a continuance for a sufficient length of time for him to acquaint himself with the defense. Mr. Pierce then asked and secured permission of Mr. Hudgins to refile the motion for continuance he had filed, and notice to take

depositions, which motion for continuance was overruled and defendant excepted. The court refused to grant time to take depositions under the notice served and ordered the case to proceed to trial.

It is urgently insisted by the defendant that by the action of the court in forcing him to trial immediately after counsel, appointed on the 3d of November, 1933, had withdrawn from the case by permission of the court on the 16th day of November, 1933, the day the case was set for trial and forcing him to trial with counsel appointed by the court and immediately after the employment of counsel by the brothers of the defendant, he was deprived of his constitutional right and due process of law, as counsel was not given sufficient time to acquaint himself with the case and prepare to properly represent the defendant.

The question now arises, What is meant by due process of law in a criminal case in a state court? Due process of law is defined in Ballentine's Law Dictionary, page 413, as follows:

"Law in the regular course of administration through courts of justice, according to those rules and forms which have been established for the protection of private rights; law according to the settled course of judicial proceedings; such an exercise of the powers of government as the settled maxims of the law permit and sanction, and under such safeguards for the protection of individual rights as these maxims prescribe for the class of cases to which the one in question belongs. 6 R. C. L. 433-446."

This court, in Anderson v. State, 8 Okla. Cr. 90, 126 Pac. 840, Ann Cas. 1914C, 314, defines due process of law in the first paragraph of the syllabus, subdivisions (f) and (g), as follows:

"The term 'due process of law' is synonymous with 'the law of the land'; and in criminal cases 'the law of the

land' necessarily means the law of the state where the offense is committed, and where the trial takes place.

"In criminal cases in a state court, 'due process of law' means 'a trial in a court of competent jurisdiction, before an impartial judge and jury, or judge without a jury, upon an accusation, either by indictment or information, as the state may provide, charging the accused with the violation of some state law, of which accusation the accused must have notice in time to enable him to prepare for trial. This trial must proceed according to the established procedure or rules of practice in such state applicable to all such cases. In other words, the defendant must have his day in court. The admission of evidence for or against the accused must be according to the established rules in such state in all such cases, and the punishment inflicted must be authorized by law."

If the defendant was denied any of his constitutional rights and was deprived of due process of law, it was in the trial in the district court, as the record discloses that the defendant was represented by counsel in the preliminary trial and when he was arraigned in the district court, up to and including the day the case was assigned for trial, and when it was announced by the state it was ready for trial. What right of the defendant was denied, if any, to show that the defendant was denied due process of law occurred when the case called for trial, and when counsel that had been representing the defendant for thirteen days prior to the calling of the case for trial was permitted to withdraw from the case, and counsel was appointed by the court and hired by the brothers to defend. It is necessary to carefully study the record to ascertain as to whether or not the defendant was deprived of due process of law by being forced to trial immediately after counsel who defended him was called in to the case, keeping in mind that from the day of the preliminary up to and including the date the case was called for trial, which had

been regularly assigned for several days, the defendant had been accorded due process of law by having counsel representing him in his preliminary examination, and by counsel appointed by the court representing him when he was arraigned, and by counsel who had prepared a demurrer, motion for continuance, and notice to take depositions, and filed the same in the court, and having the same passed on by the court.

The defendant, in his brief, relies on Powell v. State of Alabama, reported in 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527.

A careful examination of Powell v. State of Alabama, supra, discloses the facts are not the same as in this case. In the Powell Case the crime was committed on March 25, 1931; the indictment was returned March 31, 1931, and on the same day the defendant was arraigned and entered his plea of not guilty. No counsel had been employed and aside from a statement made by the trial judge several days later and during the colloquy immediately preceding the trial, the record does not disclose when or under what circumstances an appointment of counsel was made or who was appointed. During the colloquy the trial judge, in response to a question, said he appointed all the members of the bar for the purpose of arraigning the defendants, and he anticipated that the members would continue to represent the defendants if no counsel appeared, therefore the Powell Case is not in point, and does not sustain the contention of the defendant in this case, as it is clearly shown that in the preliminary and in his arraignment 13 days before the case was assigned and called for trial a reputable lawyer of good standing at the bar of the court where the defendant was called to answer was appointed and continued to represent defendant until the day the case was called for trial, when coun-

sel appointed by the court asked permission to withdraw for the reason the defendant had advised him he did not care to have him defend him further. Counsel was then appointed by the court and hired by the brothers of defendant to defend, and the court ordered the trial to proceed. At every stage of the proceedings up to the date of calling the case for trial, the defendant was represented by an able lawyer.

The record does not disclose any reason why at the late hour the defendant did not want counsel to defend him unless his request was based on the statement in the record that counsel had been trying to get him to enter a plea of guilty. Be it said to the credit of the counsel who had been appointed to defend that he had taken every step necessary to raise the question of the validity of the information, and had filed a motion for continuance and notice to take depositions prior to his withdrawal from the case.

The question as to whether or not due diligence was shown in the motion and whether or not the court should grant a further extension of time to give counsel an opportunity to prepare for trial is in the sound discretion of the trial court and unless that discretion has been abused this court will not reverse the same.

In Likes v. State, 54 Okla. Cr. 444, 23 Pac. (2d) 394, in the fourth paragraph of the syllabus, this court said:

"Time allowed for trial after plea of not guilty is within court's discretion, subject to review if abused."

The court further stated in the opinion:

"Defendant in a criminal case is entitled to a reasonable time to prepare for trial; the time allowed for trial after plea is largely discretionary. What is a reasonable time depends on the facts and circumstances in

each case. What might be a reasonable time to prepare for trial in one case might be wholly inadequate in another."

The facts in this case fail to show an abuse of discretion. The crime was committed on April 22, 1933, and the defendant was given a preliminary trial June, 1933; no statement is contained in the record that the defendant was a pauper and unable to employ counsel, nor is there any statement in the record showing as to what counsel representing the defendant did in the preliminary trial in preparing this case for trial and from the preliminary trial in June up to November 3, 1933. The record discloses the first time it was brought to the knowledge of the trial judge that the defendant was a pauper and had no relatives able to and willing to employ counsel for him was on the 3d day of November, 1933, the date the defendant was arraigned, and at that time counsel was appointed for him and continued to represent him until November 16, 1933, the date the case was called for trial, and counsel appointed by the court was permitted to withdraw; it is shown that from the date of the preliminary up to and including the day the case was called for trial on November 16, 1933, defendant had able counsel to represent him, and it is further shown that he had brothers living in the city of Muskogee where the trial was to be held.

In Hall v. State, 11 Okla. Cr. 57, 142 Pac. 1044, in subdivision (a) of the first paragraph of the syllabus, this court stated:

"A motion for continuance, based upon the ground that counsel were employed immediately prior to the calling of the case for trial, and had no time for preparation for the trial on that account, is addressed to the sound discretion of the court, and his rulings thereon will not be

disturbed by this court, unless it clearly appears that such court acted arbitrarily and not in the dispassionate exercise of the discretion contemplated by law."

In Brewer v. State, 13 Okla. Cr. 514, 165 Pac. 634, this court held:

"An application for continuance is addressed to the sound discretion of the trial court, and when such application is based upon the proposition that counsel have had insufficient time to prepare for trial, this court will review the record and consider all of the circumstances in connection with the employment of attorneys from the time the arrest was made; and when it is made to appear that capable lawyers have been employed, and have withdrawn from the case because fees were not paid, and that other capable counsel was employed, and a part of the fee paid some time prior to the calling of the case for trial, and the remainder on the date the same was called for trial, but that no effort had been to prepare the case for presentation to the jury, a reversal will not be granted on the ground that the court abused its discretion in refusing a continuance for the term, which would amount to a delay of six months."

There is no showing that the defendant, his relatives or his attorney who appeared for him in the preliminary trial made any effort to prepare a defense for the defendant from June until November 3, 1933, when Attorney Brown withdrew from the case and Attorney Hudgins was appointed. The defendant asked that he be given a new trial so he could present the defense of insanity. The showing made by the defendant in support of his motion for a continuance discloses it was insufficient to sustain that contention, and the court properly overruled the motion of the defendant for a continuance, the defendant failing to show diligence.

It is the duty of the defendant to make an honest effort to prepare for trial. The record fails to disclose

why process was not procured for the witnesses or steps taken earlier to secure the depositions or attendance of the witnesses. The defendant cannot sit idly by and wait until the day of trial before he begins to get ready for trial. He must be diligent. If any special reason exists which causes him to fail to exercise the utmost diligence, this reason must be stated in his motion for continuance as an excuse for not having exercised the utmost diligence. No such reasons are stated in the motion, and the defendant has utterly failed to show the exercise of due diligence. He had from June, the date of the preliminary, until November 3, 1933, the date he was arraigned and counsel appointed for him; he then had thirteen days between the date of arraignment and the date the case was assigned for trial. No action was taken during that time and the motion for continuance and notice to take depositions was filed the day the case was assigned for trial.

The defendant is entitled to a reasonable time to prepare for trial. In Scott v. State, 29 Okla. Cr. 324, 233 Pac. 776, in the first paragraph of the syllabus, the court said:

"A defendant charged with crime is entitled to a reasonable time to prepare for trial, and what is a reasonable time will depend upon the circumstances surrounding a particular case."

The granting or denial of a motion for a continuance in a criminal case rests in the sound discretion of the trial court. Warren v. State, 24 Okla. Cr. 6, 215 Pac. 635; Killion v. State, 19 Okla. Cr. 215, 198 Pac. 625; Smith v. State, 16 Okla. Cr. 684, 181 Pac. 942.

In determining the question as to whether or not the court abused its discretion in overruling defendant's motion for a continuance, this court will carefully review

the record and consider all of the circumstances in connection with the employment or appointment of attorneys from the time the arrest was made, and when it is made to appear that capable lawyers have been employed or appointed and had withdrawn from the case, and other capable counsel was employed, but that no effort has been made to prepare the case for presentation to the jury, a reversal will not be granted on the ground that the court abused its discretion in refusing to grant a continuance. Brewer v. State, 13 Okla. Cr. 514, 165 Pac. 634.

The defendant urges that his motion in arrest of judgment should have been sustained and that he be given an opportunity to show that he was insane, setting forth facts in' support of his motion. It is needless to go into detail and cite authorities upon this question, but suffice it to say that the showing made by the defendant was not sufficient to warrant the court in sustaining his motion in arrest of judgment or his motion for a new trial. This court in Roe v. State, 17 Okla. Cr. 587, 191 Pac. 1048, laid down the rule as to a test of mental responsibility.

In Adams v. State, 49 Okla. Cr. 94, 292 Pac. 385, this court said:

"The rule that insanity, once proved, is presumed to continue, obtains only in cases of a chronic or permanent nature. If the insanity, admitted or proved, is only occasional or intermittent in its nature, the presumption of its continuance does not arise."

In Arms v. State, 49 Okla. Cr. 34, 292 Pac. 76, the fourth paragraph of the syllabus reads:

"The test of criminal responsibility for committing an act which is declared to be a crime is fixed at the point where the accused has mental capacity to distinguish between right and wrong as applied to the particular act

and to understand the nature and consequences of such act."

There are many other questions which have been argued by the defendant, which it is not necessary to discuss as they are not applicable to the facts as shown by the record. This court has carefully considered the question raised by the defendant as to whether or not he was denied due process of law, and, from the facts shown, have reached the conclusion that defendant's contention is not borne out by the record.

A careful reading of the record does not indicate an abuse of discretion on the part of the trial court. The defendant seems to have become dissatisfied with counsel that was appointed by the court and the morning the case was set for trial advised that he did not want counsel to defend him. In our judgment the trial court acted entirely within the reasonable exercise of its discretion in requiring the case to be tried. The application for postponement on the ground of absent witnesses for a few days may or may not have been meritorious. The defendant and his associates willfully and premeditatedly waylaid the deceased on the public highway and killed him. The killing was uncalled for and without justification. Society and the law will tolerate no such conduct as the accused was guilty of in this case.

There are no errors in the record warranting a reversal. The judgment of the trial court was just and proper. The court and the jury properly discharged their duty. The case is affirmed.

The original time fixed for the execution having passed, owing to the pendency of this appeal, it is considered, ordered, and adjudged by this court that the judgment and sentence in the district court of Muskogee coun-

ty be carried out by electrocution of the defendant, on Friday, the 4th day of January, 1935.

EDWARDS, P. J., and CHAPPELL, J., concur.