## FRANK EMMETT RICE v. STATE.

No. A-10754.   Feb. 26, 1947.
(177 P. 2d 849.)

F. E. Riddle, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Haskell A. Holloman, Asst. Atty. Gen., Dixie Gilmer, Co. Atty., and M. S. Simms, Asst. Co. Atty., both of Tulsa, for defendant in error.

BAREFOOT, P. J.  Defendant Frank Emmett Rice was charged in the district court of Tulsa county with the crime of robbery with firearms; was tried, convicted and sentenced to serve a term of 25 years in the State Penitentiary, and has appealed.

This defendant was previously convicted under this same charge, his case appealed to this court and reversed and remanded. Rice v. State, 80 Okla. Cr. 277, 158 P. 2d 912. He was again convicted, and has appealed to this court.

Subsequent to his present conviction, and on June 8, 1946, defendant filed in this court a petition for writ of habeas corpus, seeking his release from the State Penitentiary, where he is now confined. Both cases have been briefed and submitted on oral argument. As the same issue is presented in both cases, and by agreement, they are considered together.

A detailed statement of the facts surrounding this charge is set out in the former opinion of this court. We shall not repeat the facts, but only refer to them when necessary to decide the issue here involved.

The assignments of error here presented are:

"1. Where defendant is charged in a state court with a serious offense, and is unable to employ counsel, a refusal or failure to assign counsel to represent the defendant, whether requested or not, is a violation of the State Constitution, and likewise a violation of the 14th Amendment to the Federal Constitution, making any judgment rendered absolutely void.

"2. Where a defendant is forced by the state court to trial with undue haste, is equivalent to a denial of the use of counsel in his defense, and voids any judgment which may be rendered therein.

"3. That under all the facts and circumstances of this case, the punishment of twenty-five years in the State Penitentiary is excessive."

With reference to the first and second assignments of error, the record reveals that when the former case was reversed and remanded, defendant remained in the State Penitentiary and in the Tulsa county jail until he was tried the second time, for the reason that he was unable to make bond. While defendant was in the Tulsa county jail, having been returned there from the State Peniten-

tiary, the court on January 17, 1946, entered an order setting his case for trial on the jury docket for January 31, 1946. The record reveals that this order was made at the personal request of defendant, who stated that he desired that his case be set and tried.

On the date the case was called for trial, the following proceedings are noted in the record:

"Case called for trial. Both sides ready. Defendant present in open court with counsel, Walter Henneberry. Walter Henneberry given leave to withdraw as counsel for the defendant. The court appoints public defenders, Harry Dyer and W. C. Peters as counsel for the defendant. Jury called and sworn on voir dire."

Preceding the trial, the record discloses the following proceedings:

"The Court: All right, proceed. — Mr. Dyer: Comes now the defendant, Frank Rice, through his counsel, public defender appointed at 1:50 p.m.— The Court: No, you were appointed this morning. All the records and information was ordered given you this morning. Mr. Dyer: I want to do this exactly right. The Court: Let's get it understood here, you are an officer of this court. Mr. Dyer: Yes, sir. The Court: And the court is asking you to try this case, because the defendant himself personally has requested that his case be tried at this time, and there is no burden on you except as an officer of this court, to try this lawsuit. Do the best you can. Mr. Dyer: Well, the only thing I am thinking is that somebody else may come in this case later on— The Court: All right. Mr. Dyer: Comes now the defendant and moves the court to continue this case until such time as the court may deem fit, to give counsel time to prepare this case. The Court: All right. The request is granted to this extent, that this case will be passed until 2:30 to give counsel an opportunity to consult with his client and be ready for trial at that time. (2:30. p.m., January 31, 1946, parties present and presiding as

before. Defendant present in open court.) Whereupon a jury was duly drawn, impaneled and sworn to try the issues in said cause, at 2:30 p.m., after which the following proceedings were had: The Court: You may make your opening statement."

The case then proceeded to trial and a verdict of guilty was returned by the jury at 5:30 p.m. on the same date, and defendant's punishment was assessed at 25 years in the State Penitentiary.

While it is not disclosed by the record, at the time of the hearing on the petition for habeas corpus, it was agreed by counsel for petitioner and the assistant county attorney appearing for the respondent, that at the time the case was called for trial and counsel who had been appointed by the court to defend Rice asked for a continuance of the case to enable them to prepare for trial, the defendant Rice arose in the courtroom and objected to a continuance, and told the court that he was demanding that he be tried at once, and that he was ready for the trial to proceed.

It is revealed by the record that the prosecuting witnesses, Mr. and Mrs. W. B. Dossey, were not residing in Tulsa county at the time of the second trial, and the testimony given by them at the former trial was read to the jury. The only other witnesses who testified were two city police officers who testified to arresting defendant on the night of the robbery, and one of the officers stated that defendant admitted robbing Mr. and Mrs. Dossey that night.

The record also reveals that defendant was not placed upon the witness stand, nor was any evidence produced in his behalf. The testimony of the doctors and defendant's mother, who testified in his behalf at the former trial as to his mental incapacity, was never presented to the jury.

There is attached to the petition for habeas corpus, filed in this court on June 8, 1946, an affidavit of Harry Dyer, one of the public defenders of Tulsa county who was appointed by the court to represent defendant on the date his case was called for trial and after the attorney he had employed was permitted to withdraw from the case. This affidavit is as follows:

"Personally appeared before me the undersigned authority, Harry Dyer, who on oath states that on the 31st day of January, 1946 and between the hours of 10:30 and 11 o'clock, the case of State of Oklahoma vs. Frank Rice was called for trial in Division No. 1 of the District Court.

"Affiant states that Walter Henneberry had been employed to represent Frank Rice, and after the case was called for trial the said Walter Henneberry asked leave of the court to withdraw as attorney for Frank Rice; that the court entered an order permitting the said Walter Henneberry to withdraw as such attorney.

"Affiant further states that he was informed some time during the morning that R. R. Linker had been employed to assist the said Walter Henneberry in representing the said Frank Rice in his trial; that it was reported by some one at the court room that Mr. Linker was home ill and not able to be present in Court and to participate in the trial of Frank Rice; that some inquiry and investigation was made as to the condition of Mr. Linker, and that it was ascertained that he was home confined to his bed on account of illness. That at this time it was getting up toward the noon hour. That affiant and one W. C. Peters, were the two public defenders in Tulsa County; that the court suggested their services were needed to defend Frank Rice, who was charged with robbery with fire arms, wherein the death penalty could be inflicted; that after the court reconvened at 1:30 affiant and the said W. C. Peters appeared in court, having been requested by the trial judge to defend the said Frank Rice; that after the said Walter Henneberry had withdrawn from the case

and until this affiant and W. C. Peters were appointed by the Court, the said Frank Rice had no attorney.

"That affiant and the said W. C. Peters at the time the court reconvened at 1:30, had no knowledge or information about the evidence and facts in said case, and had not had an opportunity to consult with and advise with defendant in regard to his defense and was not acquainted with any of the facts. That they were informed and knew that the said Frank Rice had been tried and convicted in said court about two years prior thereto and was given a life sentence upon said charge which conviction had been reversed by the Criminal Court of Appeals; that affiant nor the said W. C. Peters had ever seen or read the transcript of the former trial, and knew nothing about the testimony introduced on the part of the State and the defense in the former trial including the testimony of the doctors; that both affiant and the said W. C. Peters were wholly unprepared to intelligently conduct said defense for said defendant at 1:30 p.m., when the court reconvened.

"That affiant and the said W. C. Peters requested the court at 1:30 p.m. to grant them a reasonable time to consult and advise with the said defendant in order to familiarize themselves with testimony and to examine and read the testimony of the former trial; that the court thereupon granted them one hour, until 2:30 to consult the defendant and to prepare for trial; that the State intended to and did use the testimony in the transcript of the former trial, which the county attorney used and introduced in evidence against the defendant.

"Affiant states that when the trial started at 2:30 p. m. they still had not had access to the transcript of the proceedings and the evidence on the former trial and did not have a copy of the same and were still unfamiliar with the testimony in said transcript including that of the doctors, nor did they have time to ascertain if other witnesses could be had for the defendant outside of the transcript and were still unprepared to enter upon the defense of said

defendant in justice to themselves or to the defendant, all of which was known, or should have been known to the court, and the court declined to give them further time.

"Affiant states that under the direction of the court to the clerk, the clerk began to draw and call a jury from the box, to sit in the case. That the jury was drawn and sworn and opening statements of the county attorney made, and the state introduced its evidence, and the court charged the jury, and the arguments on the part of the state and of the defendant were made, the case submitted to the jury for consideration, and a verdict returned in open court about 5:30 p.m., between 5:30 and 6 p.m. of said day, convicting the defendant, giving him twenty-five years in the State Penitentiary. Affiant and the said W. C. Peters did not introduce the transcript of the evidence of the two doctors nor said doctors, and of the cross-examination of the state's witnesses because they had not had time to examine and read the same, nor did they have time to talk with the doctors and ascertain what their testimony would be. Affiant makes this affidavit solely in the interest of justice and he has stated the facts just as he understands them; the said W. C. Peters has passed away in the last few days.

"Dated this 5th day of June, 1946.

"(Signed)    Harry Dyer

"Subscribed and sworn to before me this 5th day of June, 1946.

"(Signed)    Ruth Kelch.
"Notary Public

"My commission expires March 7, 1950."

We desire to consider this case in the light of some early and recent decisions of this court, and the facts as stated in the prior decision in this case. These cases are: Prescott v. State, 56 Okla. Cr. 259, 37 P. 2d 830; Ex parte Cannis, 83 Okla. Cr. 113, 173 P. 2d 586; Neighbors v. State, 83 Okla. Cr. 331, 177 P. 2d 133, and Rice v. State, supra.

The state relies upon the following general rule, often announced by this court:

"It is a well settled and established rule in this state that an application for continuance in a felony case is addressed to the sound discretion of the trial court, and unless an abuse of such discretion clearly appears, this court will not reverse the judgment for a refusal to grant a continuance."

The Prescott case is very similar in many respects to the case at bar. The facts in that case are not as strong as in the instant case, however, as we shall hereinafter point out. Under the decision in that case, we would be justified in refusing to reverse this case. Likes v. State, 54 Okla. Cr. 444, 23 P. 2d 394; Hall v. State, 11 Okla. Cr. 57, 142 P. 1044; Brewer v. State, 13 Okla. Cr. 514, 165 P. 634; Scott v. State, 29 Okla. Cr. 324, 233 P. 776; Warren v. State, 24 Okla. Cr. 6, 215 P. 635; Killion v. State, 19 Okla. Cr. 215, 198 P. 625; Smith v. State, 16 Okla. Cr. 684, 181 P. 942.

In the case of Likes v. State, supra [54 Okla. Cr. 444, 23 P. 2d 395], it is said:

"Defendant in a criminal case is entitled to a reasonable time to prepare for trial; the time allowed for trial after plea is largely discretionary. What is a reasonable time depends on the facts and circumstances in each case. What might be a reasonable time to prepare for trial in one case might be wholly inadequate in another."

And in the Scott case, supra, it was stated:

"A defendant charged with crime is entitled to a reasonable time to prepare for trial, and what is a reasonable time will depend upon the circumstances surrounding a particular case."

In the Cannis case, supra, we held that there was an abuse of discretion and the petition for writ of habeas

corpus was granted and the petitioner was ordered returned to Tulsa county for a new trial. The facts there presented were much stronger than in the instant case. In that case, it was held that the petitioner, by reason of the facts, had not received a fair and impartial trial, as guaranteed by the laws and Constitution of this state. The decision in that case rested largely upon the case of Goben v. State, 20 Okla. Cr. 220, 201 P. 812.

In the Neighbors case, supra, we have referred to the Cannis case and the Prescott case. Many of the facts in the Neighbors case and the instant case are very similar. That judgment was affirmed. We held that defendant had had ample time to prepare for trial. When the public defenders were appointed to defend him, his case was continued for a period of 64 days.

What are the facts here presented? Defendant was arrested in the early morning of April 28, 1941, for crime of robbery with firearms on the night of April 27, 1941. After an information had been filed against him in the district court of Tulsa county, and on May 15, 1941, insanity proceedings were instituted in the county court of Tulsa county, and defendant was sent to the asylum at Vinita for treatment. He was kept there for a period of nine months, then turned by the superintendent of the asylum to the sheriff of Tulsa county. He was then tried on the charge of robbery with firearms which had been pending against him in Tulsa county during the time he was in the asylum. This case was tried October 8, 1942, and defendant was represented by attorneys R. R. Linker and F. E. Riddle. The case was reversed on May 16, 1945, defendant being represented on appeal by the same attorneys who represented him in the trial of his case. On January 17, 1946, an order was entered assigning defendant's case for trial on

January 31, 1946, at his request. He had theretofore employed Mr. Walter C. Henneberry of the Tulsa Bar as his attorney. Mr. F. E. Riddle was not re-employed to represent the defendant until after his second conviction and for the purpose of appealing his case, and filing the petition for writ of habeas corpus. Mr. Linker had been retained, but was sick and unable to be present when the case was called for trial on January 31, 1946. This was the day Mr. Henneberry was permitted to withdraw and the public defenders, Mr. Dyer and Mr. Peters, were appointed to defend him. The case was tried on that date. The record does not disclose the reason for Mr. Henneberry's withdrawal from the case, but at the time of oral argument and in the briefs it was stated that defendant refused to follow his advice and enter a plea of guilty, and this was the reason for counsel's action. It was stated by the assistant county attorney at the time that they had agreed to a sentence of seven years in the State Penitentiary, if defendant would plead guilty.

The facts and procedure thereafter have been heretofore stated.

From the above facts, and following the Prescott case and the cases cited therein, we would not be justified under the law in reversing this case. This defendant has had able counsel represent him in all of the proceedings. They have presented all matters before this court in an able manner. Mr. Linker had represented him in his first trial, and had been employed to represent him in the second trial. The record does not disclose his reason for changing attorneys in his second trial, nor of his re-employment of the same attorney after he was convicted the second time.

In the Prescott case, supra [56 Okla. Cr. 259, 37 P. 2d 834], this court, in considering a case in which the death penalty was upheld, said:

"The facts in this case fail to show an abuse of discretion. The crime was committed on April 22, 1933, and the defendant was given a preliminary trial June 1933; no statement is contained in the record that the defendant was a pauper and unable to employ counsel, nor is there any statement in the record showing as to what counsel representing the defendant did in preliminary trial in preparing this case for trial and from the preliminary trial in June up to November 3, 1933. The record discloses the first time it was brought to the knowledge of the trial judge that the defendant was a pauper and had no relatives able to and willing to employ counsel for him was on the 3rd day of November, 1933, the date the defendant was arraigned, and at that time counsel was appointed for him and continued to represent him until November 16, 1933, the date the case was called for trial and counsel appointed by the court was permitted to withdraw, it is shown that from the date of the preliminary up to and including the day the case was called for trial on November 16, 1933, defendant had able counsel to represent him, and it is further shown that he had brothers living in the city of Muskogee where the trial was to be held. * * *

"In Brewer v. State, 13 Okla. Cr. 514, 165 P. 634, this court held:

" 'An application for continuance is addressed to the sound discretion of the trial court, and when such application is based upon the proposition that counsel have had insufficient time to prepare for trial, this court will review the record and consider all of the circumstances in connection with the employment of attorneys from the time the arrest was made; and when it is made to appear that capable lawyers have been employed, and have withdrawn from the case because fees were not paid, and that other capable counsel was employed, and a part of the fee paid some time prior to the calling of the case for trial,

and the remainder on the date the same was called for trial, but that no effort had been made to prepare the case for presentation to the jury, a reversal will not be granted on the ground that the court abused its discretion in refusing a continuance for the term, which would amount to a delay of six months.'

"There is no showing that the defendant, his relatives or his attorney who appeared for him in the preliminary trial made any effort to prepare a defense for the defendant from June until November 3, 1933, when Attorney Brown withdrew from the case and Attorney Hudgins was appointed. The defendant asked that he be given a new trial so he could present the defense of insanity. The showing made by the defendant in support of his motion for a continuance discloses it was insufficient to sustain that contention, and the court properly overruled the motion of the defendant for a continuance, the defendant failing to show diligence.

"It is the duty of the defendant to make an honest effort to prepare for trial. The record fails to disclose why process was not procured for the witnesses or steps taken earlier to secure the depositions or attendance of the witnesses. The defendant cannot sit idly by and wait until the day of trial before he begins to get ready for trial. He must be diligent. If any special reason exists which causes him to fail to exercise the utmost diligence, this reason must be stated in his motion for continuance as an excuse for not having exercised the utmost diligence. No such reasons are stated in the motion, and the defendant has utterly failed to show the exercise of due diligence. He had from June, the date of the preliminary, until November 3, 1933, the date he was arraigned and counsel appointed for him; he then had thirteen days between the date of arraignment and the date the case was assigned for trial. No action was taken during that time and the motion for continuance and notice to take depositions was filed the day the case was assigned for trial. * * *

"In determining the question as to whether or not the court abused its discretion in overruling defendant's mo-

tion for a continuance, this court will carefully review the record and consider all of the circumstances in connection with the employment or appointment of attorneys from the time the arrest was made, and when it is made to appear that capable lawyers have been employed or appointed and had withdrawn from the case, and other capable counsel was employed, but that no effort has been made to prepare the case for presentation to the jury, a reversal will not be granted on the ground that the court abused its discretion in refusing to grant a continuance. Brewer v. State, 13 Okla. Cr. 514, 165 P. 634."

It will be noted from these facts that there was a space of time between the first trial of defendant and his second trial of three years, three months and 23 days. Of his own volition he had discharged, for some cause not disclosed by the record, attorneys who had represented him and had employed other attorneys. There is nothing in the record to indicate that he was unable to employ counsel, or that he had made any attempt to prepare or to have his case prepared for trial. No subpoenas had been issued for witnesses in his behalf, and no due diligence as the law demands was shown. From a purely legal standpoint, and the authorities heretofore cited, the trial court did not commit legal error in refusing to grant a continuance to defendant. It is true that during most of this time defendant had been confined in jails, the asylum, and the State Penitentiary, but he had friends and relatives who were capable and able to assist him. Courts should not permit a defendant to so conduct himself that he may voluntarily delay the hand of justice.

By reason of the facts as above stated, the conduct of the defendant, the lack of diligence on his part, and the length of time he had to prepare his case for trial, and to employ counsel, we are of the opinion that under the law

and facts the court had the right to exercise his judicial discretion and refuse a further delay.

Having studied this record from the time of the first appeal and knowing the facts as presented by the record, we can draw a conclusion that satisfies our own mind and may be considered hereafter. From our knowledge of the record in this case, and of the prior trial, we do know that this case was not tried to the defendant's best advantage. At the first trial, two able doctors who had examined defendant at the time of the insanity hearing before the county court of Tulsa county testified that after a thorough examination it was their opinion that the defendant was insane at the time the crime was committed. Another reputable physician corroborated their opinion. There was practically no evidence offered by the state to the contrary. The mother of the defendant testified as to defendant's insanity, as stated in the former opinion of this court. At defendant's second trial, which is being considered now on appeal, none of the witnesses above named were called by the public defenders in defendant's behalf, nor was the testimony given by them at the former trial read to the jury. Of course, the record does not disclose why this was not done. There may have been a good reason for not doing so. But to our mind, it reveals that the public defenders were not familiar with the record and facts of the former trial, otherwise this evidence would have been presented. This conclusion is justified by the affidavit of Harry Dyer, one of the public defenders, attached to the petition for habeas corpus as part of the record, in which he says:

"That affiant and the said W. C. Peters at the time the court reconvened at 1:30, had no knowledge or information about the evidence and facts in said case, and had not had an opportunity to consult with and advise with defendant in regard to his defense and was not acquainted

with any of the facts. That they were informed and knew that the said Frank Rice had been tried and convicted in said court about two years prior thereto and was given a life sentence upon said charge, which conviction had been reversed by the Criminal Court of Appeals; that affiant nor the said W. C. Peters had ever seen or read the transcript of the former trial, and knew nothing about the testimony introduced on the part of the State and the defense in the former trial, including the testimony of the Doctors * * *."

While this court is of the opinion that under the facts and authorities heretofore cited, we should not reverse this case, we are further of the opinion that all of the facts should be considered with reference to the question of the judgment and sentence being excessive. This defendant was arrested for this crime on April 28, 1941. Practically all of the time since that date he has been confined either in jail, the asylum, or the State Penitentiary. The facts surrounding the committing of this offense, which are fully stated in the former opinion of this court, are such that would indicate that the crime was committed at a time when defendant was not in a mental condition that would demand a life sentence as was given by the jury in the first instance, nor does the assessment of a term of 25 years in the penitentiary on the second trial seem to be justice, according to all the facts and circumstances heretofore related. Counsel who now represent defendant, in answer to a question, stated that he did not consider defendant insane at the present time.

We are of the opinion that the judgment and sentence of 25 years is excessive, and that justice demands that it be reduced to a term of ten years.

It is therefore ordered that the judgment and sentence of the district court of Tulsa county be and the same

is hereby modified from a term of 25 years in the State Penitentiary, to a term of ten years in the State Penitentiary; and the warden of the State Penitentiary is directed to enter this order upon his records, and upon the completion of said sentence, as provided by law, that defendant be discharged.

JONES and BRETT, JJ., concur.