THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RA-MÓN RODRÍGUEZ CORREA, Defendant and Appellant.

Nos. CR-62-359, CR-62-360.　　Decided June 26, 1963.

*Santos P. Amadeo* and *Enrique González* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for The People.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

The essential facts are, briefly, the following: Appellant and another individual engaged in a quarrel on Eduardo Conde Street in Santurce, P.R., as a result of which they started to throw stones at each other. The quarrel produced the natural disturbance of the peace on that street and a number of neighbors and curious people gathered there. A few minutes later policeman Rosendo Torres Pabón arrived at the scene and proceeded to investigate the occurrence. Policeman Torres Pabón and appellant engaged in an argument and the policeman finally took defendant and the other individual who participated in the quarrel to the nearby police station on Loíza Street. Shortly thereafter these persons returned to the same place of the occurrence, since they were neighbors of that place, and a few minutes later the police car brought policeman Torres Pabón who also lived there. Torres Pabón had completed his day's work and was returning home.

While Torres Pabón was talking on the sidewalk with one of the neighbors of the street, appellant walked toward

him and, without either of them uttering a single word, appellant swung his fist and struck the policeman on the right side of his face. Both engaged in a strife; appellant took the policeman's revolver from the holster and fired one shot at him. Policeman Torres Pabón fell to the ground and made no attempt to get up. Appellant stood near him with the revolver in hand. While Torres Pabón was lying on the ground appellant fired the remaining five shots at him.

The physician who performed the autopsy on Torres Pabón explained in his testimony at the trial that the shots fired at him entered the following organs: both lungs, the trachea, the heart, the spinal column, the small intestine and the stomach. When Torres Pabón arrived at the hospital a few minutes later he was already dead.

After the crime appellant left the place carrying the policeman's revolver with him. Sometime later he went to police headquarters on Loíza Street and delivered himself up, advising that he had killed policeman Torres Pabón. The jury found appellant guilty of murder in the first degree and of carrying weapons.

■ Appellant assigns two errors. In the first he alleges that the trial court abused its discretion in refusing to grant a continuance as requested by the defense attorneys, thereby depriving defendant of an "active and effective legal defense."

FIRST ERROR: We shall see that the trial court did not abuse its discretion in refusing to continue the trial on August 9, 1960. That was the fifth motion for continuance made by defendant. The other four had been granted. The crime was committed on September 3, 1959. The trial was set the first time for December 21, 1959. That day, on motion of the defense attorney, the trial was continued and set for February 8, 1960. On motion of the defense it was continued for the second time and set for May 4, 1960, when it was continued for the third time also at the request of the defense.

The prosecution witnesses appeared on all those occasions and it was necessary to dismiss them. The trial was set for July 12, 1960, and for the fourth time it was continued at the request of the defense. It was finally set for August 9, 1960, when for the fifth time the defense moved for a continuance. Logically, the district attorney objected to a further continuance. He informed the court that two prosecution witnesses had already left for the United States.

Appellant argues that one of the two attorneys who represented defendant at the trial was appointed by the court on July 12, 1960, and that he did not have sufficient time to prepare himself.

We have examined the 13 cases cited by appellant in his discussion of the first error. In 12 of them it was held that the trial court's refusal to continue the trial did not deprive defendant of his right to legal assistance. Further on we shall consider the nature of these cases. Only one of the cases cited held otherwise, namely, that the refusal to continue the trial deprived defendant of his right to legal assistance. In the latter case the circumstances were so extreme that it does not bear relation to the case at bar. In that case, *Cass* v. *Commonwealth*, 33 S.W.2d 332 (1930), defendant was convicted of murder and sentenced to death. When defendant appeared in court on the day of the trial without counsel, the court appointed an attorney and proceeded immediately with the trial without giving the defender an opportunity to prepare himself and disregarding his motion for continuance. There is no question that the appellate court was bound to reverse that judgment. Clearly that is not the situation in the case at bar.

Of the other 12 cases cited by appellant the first three, *People* v. *Montaner*, 61 P.R.R. 116 (1942); *People* v. *Busigó*, 63 P.R.R. 967 (1944); and *Romero* v. *Warden*, 78 P.R.R. 544 (1955), do not favor him. It is so admitted by appellant

and he points out that this case is not the same as these. Nor do the other cases help him. Let us consider them briefly.

In *Andrews* v. *Robertson*, 145 F.2d 101 (1944), defendant was convicted of rape and sentenced to death. The problem of lack of adequate legal assistance was raised and the court of appeals held that defendant had sufficient legal assistance and affirmed the judgment. In *Pierce* v. *Hudspeth*, 126 F.2d 337 (1942), defendant was convicted of an offense against mail property and sentenced to serve 25 years in the penitentiary. The judgment was affirmed. In *Hudspeth* v. *McDonald*, 120 F.2d 962 (1941), defendant was convicted of conspiring to commit kidnapping. The habeas corpus sought was denied. In *Ex parte Haumsesch*, 82 F.2d 558 (1936), defendant was convicted of murder and sentenced to death. The habeas corpus was denied. In *Smith* v. *State*, 56 A.2d 818 (1948), defendant was convicted of rape and sentenced to death. The problem was the same as that raised by appellant in the case at bar. In the *Smith* case the defense attorney had 15 days to prepare himself and the court of appeals concluded that he had had sufficient time. The judgment was affirmed. In *Neighbors* v. *State*, 177 P.2d 133 (1947), defendant was convicted of manslaughter and sentenced to serve 20 years in the penitentiary. It was also held that the trial court did not abuse its discretion in refusing to grant a continuance, and the conviction was upheld. In *Prescott* v. *State*, 37 P.2d 830 (1934), defendant was convicted of murder and sentenced to death. In refusing to continue the trial, the trial court was sustained and the judgment was affirmed.

The last three cases cited by appellant in the discussion of the first error are *Cass* v. *Commonwealth, supra,* already discussed, that of *Carter, infra,* and *Gibson, infra.* In *Carter* v. *Commonwealth,* 81 S.W.2d 883 (1935), defendant was convicted of murder and sentenced to death. The trial court was sustained and the judgment affirmed.

In *State* v. *Gibson*, 50 S.E.2d 520 (1948), the circumstances are also extreme, but nonetheless the court of appeals affirmed the judgment. Defendant was convicted of rape and sentenced to death. The court appointed an attorney and set the hearing of the case for the following day at 2:00 p.m. On that day the court proceeded with the trial with the aforementioned result. The court of appeals sustained the trial court in the exercise of its discretion and affirmed. We mention this case because appellant cites it, not because we believe it is a leading case.

As has been seen, since the case of *Cass* v. *Commonwealth*, *supra*, presents such an extreme situation that it is very different from that in the case at bar, and since the holding in the other 12 cases was contrary to appellant's theory, appellant does not have a single case of those cited by him to support his theory. However, we emphatically declare that if appellant's theory were tenable, even if there did not exist a single case in all the books of decisions known to us, we would agree with him. However, appellant's theory is not tenable. Appellant was represented at the trial by two attorneys. Of those two attorneys, one was appointed by the court on July 12, 1960, and the hearing was held on August 9 of that year. That attorney had 27 days to prepare himself. In view of the nature of the case, he had sufficient time. The legal problem was not a complex one, nor was there need to find the whereabouts of a great number of witnesses dispersed throughout the country or abroad; nor were the facts so complicated that a study thereof would require a long time. The facts were simple, the witnesses were few and residents in the same neighborhood.[1]

■ We have read the complete transcript of the evidence which consists of 364 pages. The transcript shows that the

---

[1] Rule 109 of the new Rules of Criminal Procedure grants to defendant a term of not less than 20 days to prepare himself for the trial.

Superior Judge who presided at the trial was fair and impartial; that the defense in which the two attorneys intervened was active and competent; and that the district attorney acted with exemplary demeanor during the prosecution. There is no question that the right to assistance of counsel in criminal prosecutions includes the right to reasonable time to enable the attorney to confer with defendant and to prepare himself for the trial. However, as stated in *Romero* v. *Warden, supra,* at 549, such right may not be used by defendant to obstruct the normal course of proceedings. What is reasonable time depends on the circumstances in each particular case. See, also, *People* v. *Cordero,* 82 P.R.R. 367 (1961).

In *Avery* v. *Alabama,* 308 U.S. 444 (1940), defendant was convicted of murder. On March 21 the court appointed legal counsel and the trial was held on March 24 of the same year. The Supreme Court of the United States affirmed. See, also, *Michel* v. *Louisiana,* 350 U.S. 91 (1955); *United States* v. *Decker,* 304 F.2d 702 (1962); and *Torres* v. *United States,* 270 F.2d 252 (1959). The first error assigned was not committed.

SECOND ERROR: In the second error assigned it is alleged that the trial court erred in not instructing the jury specifically that it could return a verdict of murder in the second degree if, owing to defendant's mental condition, he could not commit the offense with the necessary deliberation and premeditation to constitute the offense of murder in the first degree.

■■ This error was not committed either. In the first place, such instruction was not requested by the defense despite the fact that the judge asked them if they wished any special instruction (T.E. p. 347). To this question of the magistrate the defense answered: "None on our part." Nor did the defense take any exception to the instructions which the judge gave to the jury. When the judge asked the

two defense attorneys whether they wished to take any exception to the instructions given by the court, the defense answered none (T.E. p. 360). A defendant who fails to request an instruction from the court on a particular point cannot allege as error the omission of such instruction. *People* v. *García*, 78 P.R.R. 379, 388 (1955); *People* v. *Cruz*, 78 P.R.R. 74 (1955); *People* v. *Matos*, 26 P.R.R. 520 (1918); *People* v. *Llauger*, 14 P.R.R. 534 (1908); *People* v. *Boria*, 12 P.R.R. 166 (1907); *People* v. *Robles*, 10 P.R.R. 470 (1906); *People* v. *Dones*, 9 P.R.R. 423 (1905).

In the second place, the judge's instructions on the point raised by appellant in this second error were amply sufficient. See the following fragments taken from the instructions:

". . . The persons who commit the act charged without having conscience of it are also incapable of committing a public offense.

"Epilepsy, ladies and gentlemen of the jury, is not by itself a defense in the commission of a public offense. However, if epilepsy affects the discernment and judgment of the patient to such an extent that his mental faculties are obnubilated and nullified, and while such mental faculties are so obnubilated, nullified and the person for that reason can not distinguish between right and wrong, realize the quality and nature of the act he performs or executes, or if he realizes the act which he commits but owing to the mental confusion created by the deterioration of the epilepsy he can not distinguish between right and wrong under the law, that individual is not responsible before the law for the offense charged. However, in order to invoke successfully the defense of irresponsibility by reason of mental confusion because he can not distinguish between right and wrong, such defense must necessarily refer to the specific moment when the acts were committed; it is during the moment in which the acts are committed that the doctrine of distinction between right and wrong is applied or is effective; not on a previous occasion when he could have distinguished between right and wrong, on previous occasions, or that he might distinguish between right and wrong on subsequent occasions. It is whether at the moment of committing the acts imputed he

could then and there distinguish between right and wrong and realize the nature and quality of the act committed. . . .

"In order that a person may be responsible for an offense, it is necessary that he have intelligence and capacity to realize the criminality of his act. If his mind and his faculties are clouded at the time the offense imputed is committed, in that case he is not a reasonable moral agent and should not be punished for his criminal acts.

"The test of responsibility is the following: Did defendant have sufficient mental capacity to appreciate the nature and quality of the act performed? Did he know that that act was a violation of the rights of other persons and erroneous in itself? Did he know that such act was prohibited by our laws and that the consequence of its commission would be the punishment and penalty which such act entails? If he had capacity to appreciate the nature and to understand the possible or probable consequences of his act, he is responsible before the law for the act committed. If he had no capacity to appreciate these factors, in that case his act is not criminal and he is not responsible before the law. In order that the lack of mental capacity may excuse responsibility, ladies and gentlemen, in the commission of an offense, it must be a confusion of the mind of such nature as to block the sense of right and wrong at the time of committing the act. There should exist absence of knowledge that an act is wrong in its legal sense in order to elude responsibility. . . .

"Ladies and gentlemen of the jury, if on the result of the evidence heard in this case you are convinced beyond a reasonable doubt that this defendant committed an offense, that he fired several shots at Rosendo Torres Pabón and that those shots caused the death of Rosendo Torres Pabón in an unlawful manner, but you have reasonable doubt as to whether the offense committed by him is an offense of murder in the first degree or an offense of murder in the second degree, I repeat, you have no doubt; if you have no doubt that he committed an offense but your doubt is as to which offense did he commit, murder in the first degree or murder in the second degree, it is your duty to resolve that doubt in favor of defendant and find him guilty of the lesser of the two degrees, namely, the offense of murder in the second degree. . . .

". . . If you believe on the result of the evidence that when this citizen perpetrated the death, if you conclude that he killed Rosendo Torres Pabón, that his mental faculties were so affected that he could not then and there appreciate the nature and quality of his act and that he could not distinguish then and there between right and wrong; or if you have reasonable and founded doubt as to whether he could then and there appreciate the nature and quality of his act, or that he could distinguish between right and wrong, it is your duty in that case to return a verdict finding defendant not guilty."

■ There was evidence in the sense that in 1956, approximately three years prior to the facts which gave rise to this trial, a physician examined defendant on a certain occasion for an epileptic seizure which he had suffered. However, there was no evidence in the sense that at the time defendant committed the crime he was under the effects of an epileptic seizure or that his mental faculties were befuddled. On the contrary, the eyewitnesses testified having seen him in a normal state. Under these circumstances, and since defendant was sound and normal at the time of the occurrence, he is responsible for his acts. See *Williams* v. *State*, 343 S.W.2d 263, 264 (1961); *Taylor* v. *State*, 140 N.E.2d 104, 107 (1957); *People* v. *French*, 87 P.2d 1014, 1019 (1939); *People* v. *Tucker*, 78 P.2d 1136, 1137 (1938).

The judgments rendered in these two cases by the Superior Court, San Juan Part, on August 15, 1960, will be affirmed.