## BONE *v.* THE STATE.

1. Notwithstanding larceny from a railroad-car is made a specific offense (Penal Code, § 185), yet if at the time of the larceny the car is within a house, such as a passenger-depot house, the same act would also be larceny from the house. The first-named offense is a misdemeanor; but where the value of the stolen goods exceeds fifty dollars, the latter offense is a felony. When a criminal act constitutes a felony and also embraces a misdemeanor, the State may elect to prosecute for the greater crime.
2. The evidence warranted the verdict.
3. Where the law is correctly given by the trial judge, this court will not, in the absence of a special assignment of error presenting the question, undertake to inquire whether the charge of the court was adjusted to the facts of the case.

Argued October 19,— Decided November 10, 1904.

Indictment for larceny from the house. Before Judge Roan. Fulton superior court. July 16, 1904.

*Bishop & Ripley* and *Rucker & Rucker,* for plaintiff in error.
*C. D. Hill, solicitor-general,* contra.

EVANS, J. Julius Bone and Cliff Brewer were jointly indicted for the offense of larceny from the house. The indictment

charged that they did wrongfully, fraudulently, and privately take, steal, and carry away with intent to steal "one suit-case containing seven shirts, two suits of underwear, two night-shirts, half dozen collars, three pairs of shoes, four red books," and also "one grip containing combs and brushes, one engineer's report on mineral property, all of the value of two hundred and fifty dollars and the property of T. R. Jones," the same being at the time located in the union passenger-depot building in the county of Fulton. The defendants severed, and Julius Bone was put on trial. It appeared from the testimony that Jones placed the two satchels, containing the articles enumerated in the indictment, in the day coach of the W. & A. train, which was at the time in the union passenger-depot building. The two defendants were seen in the building about the time of the larceny, and Cliff Brewer was seen with one of the satchels in his possession. Shortly after Jones discovered the theft of his satchels, he reported the same to the station-master, and two policemen then went to the house of a sister of Bone. Under the bed in one of the rooms of the house was found one of the satchels. The policemen, being uncertain as to the identity of this satchel, sought out Jones to get a better description of the satchels lost, and, after conferring with him, went back to the house. Upon entering it, one of them discovered Bone coming out with a negro woman who had a bundle in her arms. In this bundle were some of the clothes which Jones had packed in his suit case. The policemen pressed their way into the room where they had previously found one of his satchels, and discovered some papers in the fireplace. The papers were on fire and the blower had been placed on the grate. One of the policemen attempted to extinguish the flames by pouring water on the fire, but was resisted by Bone. In the struggle the pitcher containing the water broke, but it was over the fireplace and the flames were extinguished. The papers which were being burned were insurance policies which Jones had placed in this satchel before it was stolen. All this occurred on the same day and within a short time after the theft. The evidence further disclosed that two of the books mentioned in the indictment were the property of an insurance company, but that the remainder of the articles belonged to Jones and were of a value exceeding fifty dollars. The jury returned a verdict of

guilty as to Bone, and he made a motion for a new trial, in which he complains that the verdict was contrary to law and the evidence, and that the court erred in giving certain instructions to the jury.   The motion was overruled, and he excepts to the refusal of the court to grant him a new trial.

1. One of the contentions of the plaintiff in error is, that the proof showed that if any larceny was committed, it was from a passenger-coach under the union depot-shed, and not from the union passenger-depot building, as charged in the bill of indictment.   The evidence discloses that at the time of the commission of the larceny the satchels were in a passenger-coach, but this coach was in the union passenger-depot building.  .The plaintiff in error further insists that under the evidence he could only have been lawfully convicted of the offense defined in the Penal Code, § 185.   That section reads as follows:  "Any person entering and stealing from any hut, railroad-car, tent, booth, or temporary building, shall be guilty of a misdemeanor."   In other words, the contention is that as larceny from a railroad-car is specifically made a distinct offense by statute, the defendant was only guilty of that offense, irrespective of where the passenger-coach may have been at the time of the larceny therefrom.   This contention is not sound.   The car was in the union passenger-depot building at the time the larceny was committed.   This building is a permanent structure designed for the accommodation of passengers; and it is no less larceny from the house if an article be stolen from a coach stationed temporarily in the building than it would be to steal an article from some other part of the house.   Besides, larceny from the house, where the article stolen is of the value of fifty dollars or more, is a felony; whereas larceny from a railroad-car is only a misdemeanor.   So it is immaterial whether, in committing the offense of larceny from the house, the defendant may incidentally have also violated by the same act a statute providing for a different punishment in cases of larceny from a railroad-car; for this would make him none the less guilty of the greater offense.   Bishop on Stat. Crimes, § 171.

2. Another insistence of the plaintiff in error is that his conviction was unwarranted, for the reason that the State relied solely upon recent possession of the stolen goods to establish his guilt, and there was no evidence that he was ever in possession of any

of the stolen property. The stolen satchel recovered, together with some of its contents, was found in: his sister's house. When the policemen made their second visit to this house, the defendant was seen coming from' the house, followed by a negro woman who carried a bundle containing some of the stolen clothing. Bone then tried to evade the officers, but was unsuccessful ; and a few moments later, in the room where the stolen satchel had been discovered, attempted by force to prevent one of the officers from rescuing the burning insurance papers from the grate. Bone was also shown to have been in the union passenger-depot a few moments before the satchels were missed, in company with Cliff Brewer, who was seen to carry away one of them, and had himself been on the W. & A. passenger-train a short while before the theft was committed. From these and other circumstances brought to light by the testimony, the jury were authorized to infer that Bone was in the recent possession of the stolen goods recovered by the officers.

He still further contends that the evidence was insufficient, because the books described in the indictment were shown to be not the property of Jones, but the property of an insurance company. This point is not well taken. It appears that while the legal title to two of the books was in the insurance company in whose employ Jones was, they had been committed to his keeping and he had a special property right therein. Furthermore, the ownership of the other articles stolen was shown to be in Jones, and it was proved that the value of these articles far exceeded fifty dollars. It was not necessary that the State should prove that each and every article mentioned in the indictment belonged to Jones, or to go further than to show that he was the owner of a number of the articles, the value of which amounted to fifty dollars or more.

3. Exception is taken to a charge of the court on the subject of the recent possession of stolen goods, not satisfactorily accounted for, and also to a charge bearing on the law of conspiracy. No specific reason is given why either of these instructions was erroneous. Each sets forth correctly a familiar abstract proposition of law. In this court counsel for the plaintiff in error argued that the evidence did not authorize the giving of either of these instructions. Had he desired to make the point that the charges

were for this reason objectionable, he should have set forth this special assignment of error in his motion for a new trial. Where the law is correctly given by the trial judge, this court will not, in the absence of a special assignment of error presenting the question, undertake to inquire whether the charge of the court was adjusted to the facts of the case or in all respects authorized by the evidence.     *Judgment affirmed.*   *All the Justices concur.*