### 370.  McCABE *v.* THE STATE.

A house or building within the meaning of the Penal Code, §§178, 179, defining larceny from the house, is a structure having a roof and lateral enclosure of some sort, in which persons live or work, animals are confined, or property is stored or contained. A wharf or landing place where vessels are brought to discharge or take on cargoes, and where freight is placed awaiting removal, covered by a roof but otherwise wholly uninclosed, is not a house or building within the above sections.

Indictment for larceny from house, from Chatham superior court—Judge Cann. February 7, 1907.

Argued April 22,—Decided May 3, 1907.

*O'Connor, O'Byrne & Hartridge,* for plaintiff in error.
*William W. Osborne, solicitor-general,* contra.

HILL, C. J.   The defendant in the court below was indicted for the offense of larceny from the house, the house described in the indictment as "the storage wharf, same being a building of the Ocean Steamship Company of Savannah." The goods were piled up on the wharf, and sheds were built over the wharf for the protection of the freight from the weather. The evidence does not show that this wharf was enclosed at the sides, and it is fair to

presume that the wharf was simply a platform upon which the freight was stored, and was only protected from the top by the shed, and that there was no enclosure or protection on the sides. The main question for our decision is whether this structure constituted a house or building under sections 178 and 179 of the Penal Code, which define the offense of larceny from the house.

Under the common law, there was no such offense as larceny from the house, but such offense was included within the definition of simple larceny. 4 Blackstone's Commentaries, 239. But, beginning with the statute of Henry VIII, the distinct offense of larceny from the house was created, the evolution as to the kind of house in which larceny could be committed being, first, the dwelling-house and outhouses within the protection or curtilage of the dwelling-house, and then any out-house, shop, warehouse or storehouse, and finally any building in which anything of value was contained or stored. The fact that such places were invaded to consummate the larceny made the offense more aggravated, and a severer punishment was inflicted than in cases of simple larceny. Our own statute is very broad in its classification of buildings protected, the language being, "any dwelling-house, store, shop, warehouse, or any other building." The words "any other building" must be construed in connection with the character of buildings specifically enumerated. The building or structure protected by the statute must have the distinguishing features of a house. A house is defined to be "a place of abode or shelter; . . a building used for storing or sheltering something;" and a "building" is defined as "an edifice for any use; that which is built, as dwelling-house, barn, etc." Standard Dictionary. The Supreme Court of Georgia, in particular cases, has made several very broad applications of the word "house," as used in the statute defining larceny from the house. In *Carter* v. *State,* 106 *Ga.* 372, it declared that, "a freight-car body which had been detached from the wheels and placed upon permanent posts near a railway-track at a station, and to which a platform had been attached, thus constituting a structure to be used as 'a freight warehouse,' and which is used for this purpose only, is a 'house,' within the meaning of section 136 of the Penal Code," defining arson. And in *Williams* v. *State,* 105 *Ga.* 814, "A structure which is stationary, which is eight feet tall, covered with shingles and enclosed with wire, erected for the

purpose of the safe-keeping of birds and fowls, is a house within the meaning of our code, which defines the offense of larceny from the house." In *Bone* v. *State,* 121 *Ga.* 147, the court upheld a conviction of larceny from the house, where property was taken from a car in the union passenger-depot in Atlanta. The specific question whether the depot was a house, in the meaning of the statute, was not before the court in that case. The contention was that the indictment should have been framed under section 185 of the Penal Code, which specifically makes it an offense to steal from a railroad-car. The record does not disclose the kind of building the union passenger-depot was, but the court treated it as "a permanent structure designed for the accommodation of passengers;" and it is fair to presume that it contained rooms for passengers and baggage.

Courts of other States have defined the word "house," or "building," as contained in larceny, burglary, arson, and disorderly-house statutes. It is unnecessary to cite the decisions of those courts on the subject. In all of them the structure falling within the definition was not only covered by some sort of a roof, but was also enclosed in some way or by some kind of material. In other words, according to those decisions, a platform covered by a roof is not enough to constitute a house, but in addition to the platform or roof, or floor, there must be some lateral enclosure,— an enclosed structure where people live or work, or animate property is confined, or inanimate property is stored or contained. The Supreme Court of Texas, in *Favro* v. *State,* 39 Tex. Crim. 452, defines the word "building" in the burglary statute as "a fabric built or constructed; a structure; an edifice; . . a house for residence, business, or public use, or for shelter of animals or storage of goods. . . In the widest sense, any production or piece of work artificially built up, and composed of parts joined together in some definite manner; any construction." In *Willis* v. *State,* 33 Tex. Crim. 168, it was held that a fruit stand built in the shape of a piano box, large enough for the owner to stand up in while making sales, and in which he slept and kept his clothing, was a house, within the contemplation of the burglary statute. It has also been held that a tent in which persons lived was a house. And even a covered wagon, in which a man and woman traveled and slept, was held to be a house. The law protects the humble tenant

in his tent as well as his more fortunate neighbor in his palace, but the building must be protected from intrusion or trespass by some sort of material. It may be stone, wood, wire, or cloth. As was said by the Supreme Court of Indiana in Schilling v. State, 116 Ind. 205, "The house must be some sort of a building or enclosed structure." "Any structure which has walls on all sides and is covered by a roof, is a house." Maul v. State (Texas), 26 S. W. 200. In this Texas case the building in question was enclosed by four sides, but had no roof. And the Supreme Court of California, in People v. Stickman, 34 Cal. 245, in construing the burglary statute, held that the word "house" included every kind of building or structure "housed in." We think a careful reading of the language of our statute contained in the Penal Code, §§ 178, 179, bears out the construction that a house is something more than a mere covering or roof for a platform or wharf. "Larceny from the house is the breaking or entering any house with the intent to steal, or after breaking or entering said house, stealing therefrom," etc. There must be some sort of house or enclosure to break or enter, and to steal from. We therefore hold that a wharf only covered by a shed, and open on all sides, with nothing to obstruct entrance, and wholly uninclosed, is not a house or building, within the statute defining "larceny from the house." Where there is doubt as to whether the offense is larceny from the house or simple larceny, the safe plan would be to have two counts in the indictment, charging both offenses. The decision of this court on the foregoing question rendering a new trial necessary, we do not decide the points made on the evidence.      *Judgment reversed.*