STATE OF WYOMING,

*Plaintiff and Respondent,*

vs.

C. D. CROUSE,

*Defendant and Appellant.*

(No. 2523; November 13, 1951; 237 Pac. (2d) 481.)

For the defendant and appellant the cause was submitted upon the brief of Fred W. Layman and Allen H. Stewart, both of Casper, Wyoming.

For the plaintiff and respondent the cause was submitted upon the brief of H. S. Harnsberger, Attorney General; Howard B. Black, Deputy Attorney General; and Jack D. Froggatt, Assistant Attorney General, all of Cheyenne, Wyoming, and oral argument by Mr. Black and Raymond B. Whitaker of Casper, Wyoming, County and Prosecuting Attorney of Natrona County.

## OPINION

BLUME, Justice.

This is an appeal from the order of the judgment of the Seventh Judicial District refusing the application of defendant to change his plea from guilty to not guilty and set aside the judgment theretofore entered.

On March 30, 1951 the defendant made a statement in part as follows: "I, C. D. Crouse, 28 years of age, do give the following voluntary statement to Fred Kalber, Undersheriff and E. J. O'Meara, Deputy Sheriff in and for Natrona County, Wyoming, having first been advised of my right to Counsel, and that I do not have to make this statement, I have also been advised that anything I may say may be used for or against me in a Court of Law. This statement is not being given under threats or promise of reward, from the above officers.

On or about January 23 or 24th, 1951 I drove to the Bolton Creek Oil Lease owned by George W. Jarvis, this lease is located about 45 miles South West of Casper, Wyoming, in my Jeep Pick-Up * * *, we went in there for the purpose of hauling any metal scrap that we could find. * * * On or about the 10th and 13th of Feb. 1951 Dean Satterwhite had his Winch Truck and I had my Jeep Pick Up we went to this lease on Bolton Creek, and picked up a 15 HP Fairbanks Gas Engine serial No. 120137 and the fly wheel for it that was broken off, this engine and flywheel was also sold to the Casper Iron and Metal Co., Casper, Wyoming." He stated that prior and subsequent to that time they picked up other so-called metal scraps in or around the territory mentioned by the affiant. On April 2, 1951 the county and prosecuting attorney filed an Information charging the defendant C. D. Crouse, in Count 1 of breaking and entering a power house belonging to George Jarvis, with the intent then and there to steal property of value; in Count 2 he was charged with wilfully and unlawfully and feloniously taking, stealing and carrying away the personal goods and chattels of George Jarvis, being one 15 HP Fairbanks gas engine bearing Serial No. 120137 of the value of $25 and upwards. The defendant was thereupon arrested and on the 4th day of April, he appeared before the judge of the District Court, pleaded guilty to the crime charged in the Information, and was sentenced to serve a term in the penitentiary of this State for the minimum term of one year and the maximum term of eighteen months on each count and to serve the same concurrently. Thereafter, on April 23, 1951 he filed a petition in the District Court of Natrona County, through his attorneys, Fred W. Layman and Allen H. Stewart, reciting that on April 4, 1951 the court entered the judgment and sentence above mentioned and that on April 5 the defendant was taken to the penitentiary; that the judgment and sen-

tence of the court be regular on its face is not sustained by the evidence; that the plea of the defendant entered in the cause to the two charges was not voluntarily made; that the defendant was induced to file a plea of guilty to each count by reason of representations and statements made by Fred Kalber, Undersheriff, and County Attorney, Raymond B. Whitaker, and prosecuting witness George Jarvis, to the effect that if he plead guilty, he would be granted a parole; that the defendant admitted to the Undersheriff Fred Kalber and County Attorney Raymond B. Whitaker that he had taken the Fairbanks Engine as charged in the complaint; that he did not know that the value of the article was less than $25 at the time of its taking; that he believed he was taking the article under the authorization of the owner as secured by one Dean Satterwhite; that at the time of his plea of guilty to the charge of burglary in said Information, he had no knowledge of elements constituting the crime of burglary; that he did not learn until after the judgment and sentence of the court that the elements necessary to constitute burglary required the entrance of an enclosed building; that there was no building enclosing the engine taken, and by reason thereof there could be no crime of burglary. He duly verified the affidavit. Defendant attached to his petition an affidavit made by Dean Satterwhite reading in substance as follows: "That he was at the Bolton Creek Lease on or about February 11, 1951, at the time the Fairbanks engine which C. D. Crouse was charged with stealing was loaded into the said C. D. Crouse's truck; that at that time the pump house that had housed said motor was in a state of disrepair, portions of the walls were gone, the roof was collapsed, and said structure did not serve as a cover for the engine taken." The hearing on the petition was held before the District Court on April 27, 1951. After the hearing the court entered an order denying the petition. The order is as

follows: "This matter coming on regularly to be heard on the Petition of the Defendant filed herein, praying that the County and Prosecuting Attorney of the County of Natrona, State of Wyoming show cause why the Judgment and Sentence of this court should not be vacated and set aside and the defendant permitted to withdraw his plea of Guilty and file his plea of Not Guilty to each count of the Information and Complaint heretofore filed herein and the State of Wyoming being represented by Raymond B. Whitaker, County and Prosecuting Attorney in and for Natrona County, Wyoming and the defendant being represented by his attorneys Fred W. Layman and Allen H. Stewart, Whereupon evidence was adduced by both parties and the Court having heard counsel for both parties and being fully advised in the premises DOTH FIND:

"1. That the Judgment and Sentence of the Court rendered herein against the defendant is sustained by the evidence.

"2. That the plea of Guilty entered herein by the defendant, C. D. Crouse was voluntarily made after the said defendant had been fully advised of his right to counsel.

"3. That the defendant, C. D. Crouse was not induced to file a plea of Guilty to each count by reason of any representation or statement or statements made by the Undersheriff Fred Kalber or by the County and Prosecuting Attorney, Raymond B. Whitaker, all of the County of Natrona, State of Wyoming or the prosecuting witness, George Jarvis and that the said Fred Kalber, Raymond B. Whitaker and George Jarvis did not represent to the defendant that he would be granted a parole if he plead Guilty.

"4. That the value of the 15 hp. Fairbanks Gas Engine bearing serial number 120137 taken by the defend-

ant was $25.00 and upwards, to-wit: of the value of $1200.00 at the time and place of said taking.

"5. That the said 15 HP. Fairbanks Gas Engine bearing serial number 120137 was taken from the power-house belonging to George Jarvis by breaking and entering said power-house with the intent then and there to steal property of value.

"6. That at the time of the defendant's, C. D. Crouse, entering his plea of Guilty, he well knew what the elements of the two crimes with which he was charged were and that all of said elements have been substantiated by competent evidence presented to this court.

"WHEREFORE, IT IS BY THIS COURT ORDERED that the Petition of the defendant filed herein praying for permission to withdraw his plea of Guilty and file his plea of Not Guilty to each count contained in the Information and Complaint filed herein is hereby denied and the defendant's prayer that the Judgment and Sentence of this court should be vacated and set aside is hereby denied and the defendant's prayer that he be granted a hearing and trial on the Information filed herein is hereby denied, to all of which the defendant excepts, which exceptions are allowed."

Counsel for appellant contend that a powerhouse is not a building subject to burglary. Section 9-309, Wyo. Comp. St. 1945 is as follows: "Whoever, at any time, breaks and enters, or attempts to break and enter, into any dwelling house, automobile or other motor vehicle, kitchen, smoke-house, outhouse, shop, office, storehouse, warehouse, mill, distillery, brewery, pottery, factory, barn, stable, schoolhouse, church, meeting-house, or building used for the purpose of religious worship, car-factory, tool house, freight house, station house, depot, railroad car, sheep wagon, tent, court house, or other public building, *or other buildings whatsoever*, with

intent to commit a felony, or with intent to steal property of any value, is guilty of burglary." (Italics supplied). We are inclined to think that the portion of the statute italicized clearly shows that the legislature intended that any building whatever is subject to burglary and includes a powerhouse. 12 C. J. C. 684.

There is more merit in the contention that the structure in question was not a building within the contemplation of the statute. It is stated in 12 C. J. S. 678 that: "Generally speaking, however, to support a charge of burglary at common law or under the statutes, there must be a breaking and entering, or an entering, of a building or structure enclosed by walls and a roof." It has been held that a house is any structure which has walls on all sides covered by a roof. People vs. Stickman, 34 Cal. 242, People vs. Franco, 79 Cal. App. 682, 250 P. 698, People vs. Buyle, 20 Cal. App. 2d 650, 70 P. 2d 955. So, too, it has been held that a bin open on one side is not the subject of burglary although it has three sides and a roof. People vs. Gibbons, 206 Cal. 112, 273 P. 32. The witness Sechrist testified: "Q Did you observe any structure on the lease? A What had been a structure having machinery there, at that place. There had evidently been quite a large building there, to house machinery, that was in a very bad state of repair; the building had fallen in, and part of the building was resting on the machinery. Part of the wall attached to the roof was leaning over in very bad shape. Q Was it possible that a man could break in and enter? Will you describe to the Court the best you can the condition of the walls? A There was only one wall standing and partly leaning against the machinery or it would have fallen down. Q Any doors or windows in the building? A I did not notice any, not enough standing to see whether there was or not. Q You say you were there the latter part of January, what year was that? A

1951. Q You say that the building had walls? A Well, I suppose it originally had walls. Q How many? A Just part of one wall. Q You did not see part of any other wall? A Lying on the ground, which apparently had been on the building on the lease. Q Had it a roof? A Part of a roof, resting on the machinery. Q How big a building was that? A I don't know, enough to house machinery. Q What machinery was there? A I did not count it, there was machinery there other than the pump, shaft, and fly wheel with spokes on it, drop cables, pump, wheels, some tools from the pump house. Q You said the roof had fallen down on the machinery? A Yes. Q In other words, you would have to move the roof to get the machinery? A The biggest part of the machinery." The witness Jarvis whose property had been taken testified as follows: "Q What was the state of the building during the first part of February, 1951? A The west end was pretty badly collapsed, the east end was still in place but in such a state that would require repairs, but not wholly collapsed. Q What about the north and south walls? A The north and south walls partly collapsed, put on 2 x 4s and braced in the middle by some sides and with heavy concrete stuff. Part of the north of the building had been removed, allowing the wind to sweep in and help crush the building down. Q Did you remove part of the side? A No. Q Do you know who removed it? A I think the first piece of it was taken off by the drilling contractor to put up for cover. Not many pieces, 5, 6, or 8 sheets taken off to make protection for the men on the drilling crew. Q This engine, the Fairbanks-Morse engine, would it be possible to remove it without disturbing the building in any way? A Well, at the time I saw it, you could still get in the end of the building after it had collapsed, of course you would have to bring that stuff up to take it out, it was a very heavy piece of machinery. Q Could you drive a winch through into the building? A You

could back it in through the double sliding door. Q Do you know if the roof had collapsed? A It was pretty well in one piece, but not up in the air where it should be. Q Had it blown down? A Oh yes, when the sides caved in the roof gave out." It is quite apparent under this testimony that the powerhouse in question had neither four walls nor a roof; it was not a building, but was merely a wreck. The defendant could not be guilty of burglary as charged, and the plea of guilty, and hence, of course, the conviction and sentence in that connection should be, and are hereby set aside and held for naught.

This holding, however, does not dispose of the case before us, in view of the fact that the defendant was also charged with grand larceny to which he pleaded guilty. And judging from the sentence imposed upon him, it is altogether probable that the trial judge took about the same view of the transaction as we do.

Counsel for appellant contend that the evidence is not sufficient, or that it at least was a question for the jury, as to whether or not he was guilty of grand larceny. The engine in question here was sold as scrap iron for the sum of $36, and as scrap iron, was worth considerably less than that amount at the place from which it was taken. The property taken weighed about 3500 pounds and there is evidence to indicate that as scrap iron it was worth only $12 a ton at the place from which it was taken. However the court was not bound to consider the property purely as scrap iron. The engine was to some extent mutilated after it was sold in Casper. Without mutilation it may have been worth considerably more than considered merely as scrap iron. The witness Jarvis testified that the property was worth from $1200 to $1500. The court accepted this testimony and we are not in a position to say that it was not justified in doing so.

It is contended that the intent to steal, that is to say that the property was feloniously taken, has not been shown. It appears herein that the defendant knew that the property belonged to Mr. Jarvis. He had not obtained the latter's consent to take it. He knew or must have known that he had no right to take it. He appropriated it to a use inconsistent with the property rights of the owner. See 52 C. J. S. 821-822. Defendant in his affidavit stated that he took the property by direction of Satterwhite, supposing that the latter had the consent of the owner. Satterwhite did not testify, but he filed an affidavit as above set forth and that does not indicate that the property was taken under his direction and under the assumption that the consent of Jarvis had been obtained to remove the property. We think the contention is not good.

The contention that the defendant was promised a parole and that he entered his plea of guilty under such a promise is not sustained by the evidence. The contrary appears from the evidence introduced at the hearing on April 27, 1951. There is evidence in the record that Ernest Wilkerson, an attorney at law, appeared on behalf of the defendant before Judge Murane, Judge of the Seventh Judicial District. The time does not appear. We judge, however, that it was prior to the time that the defendant was sentenced by the court, so we find no indication in the record that the defendant did not voluntarily enter his plea of guilty. As to whether or not that plea should be vacated and the defendant permitted to enter a plea of not guilty is within the discretion of the court. We considered that subject in the case of Hubbell vs. State, 41 Wyo. 275, 285 P. 153. See also Annotations on the subject in 20 A. L. R. 1445 and 66 A.L.R. 628. We stated in Hubbell vs. State as follows: "The court has the power, after a plea of guilty has been entered, to permit it to be

withdrawn and a plea of not guilty to be entered instead. The discretion is not an absolute one, but the exercise thereof is subject to review, if an abuse of discretion is shown. * * * The presumption is that the court acted rightly, and the question before us, accordingly, is as to whether or not it affirmatively appears from the record that the court abused its discretion herein. It is apparent from an examination of the various cases upon the subject that each case must necessarily be governed by its own facts. * * * It is undoubtedly true, as claimed by counsel for defendant, that the discretion of the court should be exercised liberally in favor of life and liberty." In this case the defendant had a full and complete hearing on the question as to whether or not his plea of guilty should be set aside. We can discover nothing in the record that the court acted arbitrarily. On the contrary it gave to the defendant every opportunity to show reasons why the judgment against him should not stand. We think accordingly that we cannot hold that the court abused its discretion insofar as the charge of grand larceny is concerned. The order of the trial court is accordingly modified as above mentioned and as so modified is affirmed.

KIMBALL, C. J. and RINER, J. concur.