**Ron ASH, Appellant (Defendant below),**

v.

**The STATE of Wyoming, Appellee
(Plaintiff below).**

**No. 4565.**

Supreme Court of Wyoming.

Oct. 14, 1976.

Rehearing Denied Jan. 14, 1977.

Christopher A. Crofts of Hamilton & Hursh, Riverton, for appellant.

V. Frank Mendicino, Atty. Gen., and Craig Newman, Sp. Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

Guthrie, Chief Justice, delivered the opinion of the court.

■ Defendant, Ron Ash, was convicted by a jury in Fremont County District Court of the crime of burglary, being in violation of § 6–129, W.S.1957, and after denial of a motion for new trial[1] was sentenced to a term of one to three years in the Wyoming State Penitentiary. A written complaint charging Ash with two counts of burglary was filed on December 9, 1974, and a warrant was issued thereon. Ash appeared before the justice of the peace in Fremont County on that date and was then fully advised of his right to counsel and of his right to request counsel and have one appointed if he were unable to obtain one. An information was filed and he was arraigned before the district court on January 6, 1975, at which time no attorney appeared. The judge advised him of his right to have an attorney at the arraignment and he told the court that he wished to proceed without an attorney and then entered his plea of not guilty. The judge at that time advised him at great length and in all particulars about his constitutional rights, but particularly his right to counsel and the fact that the State would provide an attorney if he was unable to obtain one. The court then inquired if he would have an attorney to help him at the trial, and his answer was:

"Yes. If my financial condition doesn't improve before the trial date, no."

After some inquiry as to his financial condition, the judge asked him if there was any reason why he could not afford to get an attorney, and he replied as follows:

"Well, I have no cash right now. They want retainers. I paid some money for a lawyer in Casper for assistance. He advised me and stuff like that. He said he wanted to know more about the case and he may do something about it."

He refused to name the lawyer, although the court required him to do so and he answered in this manner:

"I can't. He asked me personally not to mention it, so, I can't. That was the condition in which he said he would assist me. So far as he told me, that was the condition. He felt that he could be embarrassed by it."

Thereupon the court reiterated to him that he was charged with two felonies and of his right to representation, and if he were needy or unable to make full payment for an attorney and all necessary expenses of representation that this would be supplied at public ·expense, and defendant agreed

---

1. No question is raised as to the sufficiency of this motion but to avoid some possible loss of a right to a party in some future proceeding, we shall note that the motion gives no grounds therefor except "in the interests of justice." Such motion should state the grounds. See Form No. 9, W.R.Cr.P., Vol. 2A, W.S.1957, p. 198; Rule 44, W.R.Cr.P.; 8A Moore's Federal Practice, p. 33–6 and p. 80 (June 1976 Supp.) (2d Ed.); and 2 Wright's Federal Practice and Procedure, § 551, p. 484 (1969).

that he understood this. After further discussion, in which defendant advised the court that he did not feel he was a needy person, he was then asked the direct question whether he wished to waive or give up all claim to an attorney provided at public expense. He answered, "Yes."

After having the information read, the judge then reiterated a lengthy explanation to defendant of his rights, the possible consequences of a conviction, and his right to counsel. Defendant thereupon entered pleas of not guilty to the two counts, and the judge at that time set the trial for February 11, 1975, at 9:30 a. m., and added that an attorney who would represent him must file his appearance and that any desired special instructions should be submitted by February 7. Defendant made inquiry, and the court explained the procedure of submission of instructions involved and this requirement at some length. Later, after a colloquy about the cash deposit on the appearance bond, the judge again inquired if he intended to hire a lawyer and defendant said:

"If I can get the money, I will. If the price is too high or anything else—I guess it is going to cost me to have him here to assist me as it would for him to defend me."

The judge then required him to deposit an additional $500 for a bond and advised him if he did hire a lawyer an arrangement for release of at least some of this deposit to pay an attorney would be made, and told defendant he was doing this in a special effort to get him to engage a lawyer. The court further advised him that though he had the right that he did not consider him competent to defend himself. The judge, though he deemed him to have waived the right by his plea, further gave him until January 17 to file any motions deemed proper and enjoined him to consult his attorney. On January 28 Ash filed a motion for change of judge, to which was attached an affidavit of disqualification, and the presiding judge who had handled his arraignment on January 29 assigned this

case to the Honorable Kenneth G. Hamm, District Judge of the Second District. On January 31 Judge Hamm reset the trial date for February 12 at 9 a.m. On February 10 Judge Nicholas made an order, upon application of Ash, permitting him to interview Buzz Apodaca, another defendant, to prepare his defense. Judge Hamm wrote to the county attorney, asking him to have Simonton, a member of the public defender staff, inquire of defendant if he had an attorney and if he did not that Simonton should be prepared to counsel and assist him. Simonton was advised of this letter of February 10 at 3 p. m. He talked to Ash on the 11th and went over the factual situation with him. Simonton had represented another defendant in this same incident and he was familiar with the factual situation.

He explained the trial procedure to Ash, who then advised him that he would be unable to properly handle it himself. Simonton told him to get an attorney and Ash asked that Simonton represent him. Simonton told Ash he would be bound by the court's order. At 8:30 on the morning of the trial Simonton, in company with Ash, advised Judge Hamm that Ash wished to have an attorney and asked that the court appoint Simonton as such attorney, which the court did. Simonton then advised the judge that he had several motions which might be appropriate but first made a motion for a continuance so he could "be fully prepared to stand the issues." He conceded his familiarity with the factual situation but not of Ash's defense. He advised the court he had spent some six hours on the matter but did not feel he could do a fair and competent job. Simonton also made a motion for change of venue before the trial, which was denied by the judge, who advised him he would determine if such change were necessary from the voir dire.

This rather unusual and complete statement of facts is set out because of appellant's contention that it was error for the trial court to deny appellant's motion for

continuance so that counsel might have more time for preparation.

▮ The record is clear that throughout this entire proceeding, even with repeated advice that if he could not afford counsel one would be provided, and even the strong suggestions, which might be termed importunities, by Judge Nicholas that defendant employ an attorney or have one appointed, the trial judge was not advised of Ash's desire for an attorney until 8:30 the morning of the trial. In fact, the first such statement to anyone was his concession to Simonton on the 11th that he could not handle his own defense, although he had known at all times since January 6 of the trial setting for February 11, which was thereafter reset for February 12, and he was personally served with notice of this setting on February 4. Prior to defendant's request to the court for appointment of an attorney, it would have been reversible error for the trial judge to have appointed an attorney and to have attempted to force an attorney upon Ash, *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 2540–41, 45 L.Ed.2d 562. The record furter demonstrates that had it not been for the concern of Judge Hamm and his instruction to the county attorney with regard to Simonton's reviewing this matter with Ash, he would have appeared without counsel at the time of the trial setting, because even at that time until Simonton's advice and explanation he apparently had not contemplated seeking appointed counsel. This situation was solely of defendant's making and in no way can be laid upon the doorstep of either of the trial judges, who exercised yeoman efforts to avoid this situation. It may be conceded without any argument that defendant was entitled to have competent counsel to assist him in his defense and that proper time for preparation is included within this right. It is, however, just as obvious that this is directed at the protection of the defendant and should not be or become a tool of a scheming or recalcitrant defendant to defeat the orderly processes and give to defendant the power to control the court's calendar. Judge Breitenstein, in *Leino v. United States,* 10 Cir., 338 F.2d 154, 156, expressed this most forcefully when he said:

"* * * The right to counsel may not be used to play 'a cat and mouse game with the court.' By his actions Leino waived his right to counsel. * * *"

It is our view that this defendant by his actions waived his right to the appointment of counsel until the morning of the trial.

The case of *Goforth v. United States,* 10 Cir., 314 F.2d 868, certiorari denied 374 U.S. 812, 83 S.Ct. 1703, 10 L.Ed.2d 1035, is most helpful in a resolution of this case. This case considers a claim of a defendant that he was denied effective assistance of counsel because, as here, his attorney was not appointed in time for him to adequately prepare a defense. The court observed in that opinion that competence of counsel cannot be determined solely upon the amount of time the lawyer has had with his client, 314 F.2d at 871. Defendant therein appeared without a lawyer and after the court-appointed lawyer had five to fifteen minutes to confer with defendant, the selection of a jury was begun. Defendant had been advised of his right to counsel at the arraignment and that the court would appoint an attorney if he desired. Defendant advised the court that his intention was to employ an attorney of his own choosing and never asked the court for the appointment of counsel prior to the trial. That opinion observed that the defendant "must bear a major portion, if not all, of the responsibility for the situation." The court denied defendant relief upon the basis of defendant's claim and held that this was not an abuse of discretion. The case also recognizes the rule that such continuance lies in the discretion of the trial judge and should not be disturbed unless there is an abuse of discretion, and found that this did not constitute such abuse.

One factual distinction not present in the *Goforth* case is the fact that defendant's

attorney had a familiarity with the factual situation because of his defense of another co-defendant. We find further support from a later unpublished opinion from the Tenth Circuit,[2] being *United States v. Vaughn* (April 19, 1974), which involved a case of the appointment of counsel the day before the trial date and with some opportunity, as here, to discuss the case with defendant and to see the prosecutor's file. A motion was made in that case for continuance, based upon the same ground of inadequate time to prepare and fully investigate the facts, which was denied. The court affirmed in that case, basing its conclusion upon the fact that the charge did not present any complex legal problems, that the situation was of defendant's making, and that counsel had opportunity to see the government's file and to confer with his client for several hours. It also mentioned the fact that in that case, as in this case, the motion for continuance was very general in terms and disclosed no particular reason for such continuance. It further examined, as we will do, the proceeding of the trial to determine if effective assistance was given. In affirming the trial court, reliance was made upon the *Goforth* case and several other cited cases.

Appellant's principal reliance is upon the case of *Lorenz v. People*, 159 Colo. 494, 412 P.2d 895,[3] and *State v. McWilliams*, 103 Ariz. 500, 446 P.2d 229. The *Lorenz* case is of little help on this question as it does not consider the effect of any fault of the defendant, and additionally finds that it had been clearly demonstrated that material prejudice had occurred as a result thereof, not based upon speculation as in this case. Factually, the trial judge, in denying a motion for directed verdict, had indicated as one of the grounds for the denial the evidence that defendant's 1962 income was $6000. The appointed attorney had, after the trial, secured a copy of his tax return for that year which showed no income but an actual loss of over $1800, which demonstrated the material prejudice. The *McWilliams* case clearly indicates that it was decided upon the particular facts therein presented, resulting in severe prejudice to the defendant, which we do not find demonstrated herein, and that in that case defense counsel did not have the time to examine the transcript which contained evidence upon "a central issue" involved. It will be noted, too, that the Arizona court relies in part upon *Lorenz*, supra.

Under our authorities the question which we must consider is whether the trial court abused its discretion. This has been generally discussed in *Sims v. State*, Wyo., 530 P.2d 1176, 1181.

▮ A motion for continuance based upon lack of time for defendant's counsel to prepare for trial involves a question resting in the discretion of the trial court, and such discretion will not be disturbed unless it appears it was abused, *James v. State*, 27 Wyo. 378, 196 P. 1045, 1046; *Hollywood v. State*, 19 Wyo. 493, 120 P. 471, 473, Ann.Cas.1913E, 218, rehearing denied 122 P. 588; *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377, 379; *United States v. Harris*, 9 Cir., 501 F.2d 1, 4–5; *United States v. Davis*, 10 Cir., 436 F.2d 679, 681; *United States v. Uptain*, 5 Cir., 531 F.2d 1281, 1285; and absent a clear showing of manifest injustice this discretion is not abused, *Jackson v. State*, Wyo., 533 P.2d 1, 5.

▮ The party seeking a continuance must show diligence, *Van Horn v. State*, 5 Wyo. 501, 40 P. 964, 966; *Rice v. State*, 83 Okl.Cr. 409, 177 P.2d 849, 855; *Figeroa v. State*, 244 Ark. 457, 425 S.W.2d 516, 517;

---

2. Rule 17(c) of the Tenth Circuit Court of Appeals, 28 U.S.C.A., 1976 Cum.P.P., p. 227, provides that such unpublished opinions may be cited in proceedings before that court or any other court.

3. Then Justice McWilliams, who was on the Colorado Supreme Court and joined in the *Lorenz* opinion, also joined in the *Vaughn* case as a Judge of the Circuit Court of Appeals, leaving a clear inference to the writer that *Lorenz* is based upon that factual situation.

*People v. Hicks*, 125 Ill.App.2d 48, 259 N. E.2d 846, 850; *Hoots v. State*, 171 Tex. Cr.App. 178, 346 S.W.2d 607, 608. This record demonstrates not only a lack of diligence but a careless course of inattention. The affidavit attached to the motion for new trial, although lengthy and reciting the difficulties of appellant's counsel and suggesting things he might have done in preparing a defense, makes no explanation, nor does it assign any reason or excuse on the part of the defendant for this course of action; and we are still in the dark as to why this defendant pursued such a course. The grant of the motion was discretionary and "it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel," *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, rehearing denied 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 1983, 26 L.Ed.2d 419, rehearing denied 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94, recognizes the same rule without mention of *Ungar*. The California case of *People v. Byoune*, 65 Cal.2d 345, 54 Cal. Rptr. 749, 420 P.2d 221, 223, holds that the defendant may not have a continuance if he is unjustifiably dilatory in getting a lawyer, which is certainly this factual situation.

■ We do not hold that under all circumstances this might not have been an abuse of discretion by the trial court but have examined the record. Appellant's attorney demonstrated his familiarity with the facts by his conduct in this case. There were no involved questions of law presented and it may be fairly said that disposal of this case was made upon a resolution of conflicting testimony. The affidavit filed in connection with the motion for new trial suggests the possibility of further evidence being available, which would be largely cumulative or in the nature of attacking the credibility of the prosecution's witnesses. The record re-

veals it was well tried and sharply contested. The asserted basis of error, which was refusing this continuance, must be based upon the deprivation of effective counsel as a result of his late appointment. This court has had occasion to speak to the question of ineffective counsel in *Galbraith v. State*, Wyo., 503 P.2d 1192, 1197, wherein we cited with approval *Bottiglio v. United States*, 1 Cir., 431 F.2d 930, and *Rivera v. United States*, 9 Cir., 318 F.2d 606, 608, which define ineffective counsel as "such representation as to make a mockery, a sham or a farce of the trial" or "a farce or a mockery of justice." This is certainly not true in this case.

■ Appellant's remaining issue is phrased in this manner:

"The plastic enclosure which appellant is alleged to have burglarized is not a 'building' within the meaning of the burglary statute, and the trial judge should have so concluded as a matter of law, or he should have given as instruction which defined a 'building' as a structure for the safekeeping of property."

The structure in question consisted of a temporary, wooden frame placed upon a new cement floor, which was attached to an adjoining building used as a liquor store by the owner. This was covered with a plastic covering and contained a heater to keep the cement warm and the pipes from freezing. Entry to this structure was made by pulling the plastic cover back and rocks and boards were placed at the bottom to secure this opening. There was room for a man to move around in this small enclosure.

We are confronted with a definition of "any building" in the statute, § 6–129, W. S.1957. By use of the word "any" it would appear that the legislative intent was to include all such structures within its ambit. We do not have what is particularly helpful authority on this question, but in the case of *State v. Crouse*, 69 Wyo. 85, 237 P.2d 481, 484, this court did, under an earlier statute, cite with approval 12 C.

J.S. Burglary § 16, p. 678, which contained the following definition:

"* * * Generally speaking, however, to support a charge of burglary at common law or under the statutes, there must be a breaking and entering, or an entering, of a building or structure enclosed by walls and a roof, * * *."

Appellant suggests that this definition does not settle this case. Although it is admitted the structure was enclosed with plastic, appellant suggests that this poses a question of whether such materials can be "walls" or a "roof." He poses this question without any cited authority. We assume that he found none, *Alcala v. State*, Wyo., 487 P.2d 448, 457, certiorari denied 405 U.S. 997, 92 S.Ct. 1259, 31 L.Ed.2d 466, rehearing denied 406 U.S. 911, 92 S. Ct. 1613, 31 L.Ed.2d 823; nor is any substantial reason suggested that walls or roofs must be of any special or particular material as long as they serve the basic purpose of enclosure. Particularly is this true in an ever-changing world in which new materials and methods of construction are a part of progress. Wagon sheets or canvass enclosures have been held to be walls, *Favro v. State*, 39 Tex.Cr. 452, 46 S.W. 932; and "the building must be protected from intrusion or trespass by some sort of material. It may be stone, wood, wire, or cloth," *McCabe v. State*, 1 Ga.App. 719, 58 S.E. 277, 278.

The case of *People v. Blair*, 52 Ill.2d 371, 288 N.E.2d 443, 445, contains a particularly workable definition. The Illinois burglary statute, like Wyoming's, contains no statutory defintion of a "building." That case involved the theft of a coin box in a car-wash, which was a structure with bays or stalls covered with a roof, with a concrete floor and sidewalks; the ends were open. In holding this was a building under the statute the court said:

"This court in construing the pre-1961 burglary statute has stated: 'A "building," within this act, has been defined as a fabric, structure or edifice, such as a house, church, shop, or the like, designed for the habitation of men or animals or for the shelter of property; a structure. [Citing authorities.] * * *'"

The Colorado Supreme Court, in the case of *Sanchez v. People*, 142 Colo. 58, 349 P. 2d 561, 562, 78 A.L.R.2d 775, adopted a definition approved by the California courts when it said:

"* * * we believe it was the legislative intent that a building is 'a structure which has a capacity to contain, and is designed for the habitation of man or animals, or the sheltering of property', * * *."

The North Carolina Supreme Court has adopted a definition embracing the same elements but including the element of being "usable for some useful purpose," *State v. Cuthrell*, 235 N.C. 173, 69 S.E.2d 233, 234. These definitions have the common virtue of encompassing structures which may be new or unique and will not necessitate the re-examination of this definition when different and varying types of structures may be involved in a burglary. Courts should exercise care, and there is an ever-present danger in the employment of an exclusive definition. The structure involved in this case is included in all of the within definitions and there is no reason for further discussion.

█ Insofar as the alternative assertion of error is concerned, we cannot reach this question. Appellant offered no instruction which would have included, as an element of the definition of "building," that it was "for the safekeeping of property" nor was the instruction defining a building objected to upon the ground that it did not contain this element, *Moore v. State*, Wyo., 542 P. 2d 109, 112, and cited authorities. Factually, at the time instructions were settled defendants objected to the instruction which defined "building," insisting the jury should determine if the particular structure were a building, which is strangely inconsistent with the present contention that the court should have included this as an element in the instruction or that this was not a building as a matter of law.

The judgment is therefore affirmed.

McCLINTOCK, Justice, dissenting, with whom ROSE, Justice, concurs.

I first ask: Why do the constitution of the United States and our own state constitution guarantee the right of defendants to be assisted by counsel? Why do our laws and court decisions assure a needy defendant the same assistance as his more affluent neighbor? The common law assured the presence of counsel in civil cases but did not require it in felony cases,[1] but this principle was almost universally rejected by our colonies as well as the future states.

> "* * * [T]o the credit of her American colonies, let it be said that so oppressive a doctrine had never obtained a foothold here." *Holden v. Hardy*, 169 U.S. 366, 386, 18 S.Ct. 383, 386, 42 L.Ed. 780 (1898).

*Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 84 A.L.R. 527 (1932), concerned with a trial which clearly came within the description of a "mockery and farce," a term to which I shall again refer, points out that even an intelligent and educated layman has little or no skill in the science of law; he is unfamiliar with the legal processes and

> "* * * requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence."

If, however, the defendant is to be assisted by counsel who knows little or nothing about the case, the presence of such attorney leaves the defendant in exactly that same danger. It therefore follows and the decisions so state that the guaranty of counsel means effective assistance.[2] As said in *Goforth v. United States,* 314 F.2d 868, 871 (10 Cir. 1963),[3]

> "This constitutional guaranty means effective assistance as distinguished from bad faith, sham, mere pretense *or want of opportunity for conference and preparation."* (Emphasis added)

Suppose that in this criminal case the defendant had been able to retain counsel of his own choosing, paid an acceptable retainer, and demonstrated his ability to pay the usual and proper fees of counsel in such a case. The retainer had been effected three months before the date set for and known by the attorney as the trial date. During those three months the attorney has only the most casual conversation with his client; does not investigate the facts; does not interview witnesses, both those indicated for the prosecution and those who might appear in behalf of his client; makes no examination of the law; and on the day before the trial is to begin makes such brief and sketchy preparation as he can in the short time left. Would any district judge or justice of this court consider that such conduct was anything but censurable? And why? Because by such lack of attention to his case the attorney has denied to his client the very thing for which he has been retained: the application of his education, skill, and knowledge as an attorney to the preparation and presentation of whatever defense the client had in order that at the trial all facts germane to that defense will be developed and intelligently and understandably presented to the jury under proper instructions as to the law from the trial judge. Yet by our decision this defendant has been condemned to representation by just such illy prepared counsel, not because of that counsel's general

---

1. *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932).

2. The duty in a capital case to assign counsel "is not discharged by an assignment at such time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case." *Powell v.*

*Alabama,* supra n. 1. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), without discussion of the term "effective" extends the constitutional right of counsel to any felony.

3. Citing *Powell v. Alabama,* supra, and other cases.

incompetence or lack of attention to his obligations as a lawyer, but because of strictures upon his preparation which I think were unnecessary and unwise.

Upon the oral argument of this case I made the observation that a more experienced lawyer, less in awe of the power and authority of the Bench, might have respectfully but properly declined to accept the appointment upon the mandate that he would immediately proceed to trial. Leaders of the Bar of this state have been known to file affidavits of inability properly to represent indigent clients seeking counsel, truthfully professing a lack of knowledge and familiarity with such proceedings although at the same time equally truthfully holding themselves out to the public as competent trial attorneys in the civil field and successfully participating in such litigation. I ask why they would do this, and answer that it is because they know that without time for discussion with the client, interviews with witnesses both hostile and friendly, investigation at the scene of the alleged crime, examination of the record of the preliminary hearing, reading pertinent law, they simply are not in a position capably to act in the defendant's behalf. How often is the attorney admonished not to cross-examine unless he knows what the answer will be? Preparation is the key word used by all the writers on the subject of trial technique.[4]

I therefore take the position that there can be no effective assistance without effective preparation, and denial of the continuance and opportunity for preparation under the circumstances of this case constitutes a denial of effective counsel. *State v. McWilliams,* 103 Ariz. 500, 446 P. 2d 229, 230 (1968) cites both *Powell,* supra, and *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) as guaranteeing effective counsel, and continues:

" * * * Such a constitutional right necessarily includes the allowance to

counsel of reasonable time to prepare his defense. We discussed this issue in *Stirling v. State,* 38 Ariz. 120, 123, 297 P. 871, 872 (1931):

" 'His right to have counsel, and to *have his counsel prepare his case for trial* * * * is a substantial right, and *to deny his counsel sufficient time in which to prepare his case is also the denial of a substantial right;* and, under such circumstances, to have counsel appointed to represent him would be a meaningless formality and the granting of a barren right.' (Emphasis supplied.)"

While I believe there was a denial of a constitutional right in the case at Bar, I do not think that we must go that far. The question is raised on appeal and we need go no further than to hold that the denial of the continuance was reversibly erroneous.

I agree with the statement in *Goforth,* supra, and other federal cases that the question whether the defendant has had the *effective* assistance of counsel is not to be judged by the outcome of the trial. But I cannot accede to a view that the claim of lack of effective counsel is to be sustained only if it can be shown that the attorney has been so incompetent as to render the trial a mockery and a farce. Competency in the sense of ability is one thing. But competency in the sense of application of that ability to the particular case in such a way as to present all facets of his client's defense is something else. Participation in trial without preparation does not lessen the general ability of the attorney but it materially weakens his competency in that particular case and may well result in a trial that is a meaningless charade. Concern with the court's docket is to be commended, but if my views of the importance thereof differ from those expressed in the federal cases cited in the majority opinion, then I must say that we should interfere with that docket rather than deny a de-

---

4. Goldstein Trial Technique (Goldstein & Lane 2d ed.), § 1.01, p. 1, "Preparation— Investigation—Mastery of the Facts." Bail- ey & Rothblatt, Investigation and Preparation of Criminal Cases, § 1, p. 2.

fendant the services of a reasonably skilled and reasonably prepared attorney.

I am not sure that I am at complete variance with the authorities cited by the majority. *Goforth*, cited by my Brother Guthrie as most helpful in the disposition of the case at Bar, may be philosophically in tune with the majority's disinclination to give proper assistance to one who has been dilatory in his efforts to obtain counsel, either retained or appointed, but I think that it is materially different from our case. In the first place, the attorney who had so little time for preparation did not request for continuance. This omission was deliberate and after consultation with his client and advice to him that he could ask for such continuance, but the advice was rejected because his client wanted to "get it over with." We therefore have all the elements of an express and knowing waiver. Moreover, the fact that this was a collateral attack upon the conviction, made some time after the time for appeal had expired, was a material element in the case as well as in *Frand v. United States*, 301 F.2d 102, 103 (10 Cir. 1962), quotation from which is included in *Goforth*. It seems to me that there is good reason for taking a harder line in the case of collateral attack than in a case where the request for continuance is promptly made upon appointment of the attorney and error is then urged on appeal from the conviction.[5]

This defendant was given short opportunity to retain counsel of his own choosing. He was carefully and meticulously advised of such right and furthermore that counsel would be employed for him by the state if he did not have the funds. He apparently persisted in his thought that he could obtain counsel and he did advise the court that he did not want counsel appointed. This attitude continued up to virtually the time of trial. A day or so before, at the insistence of the judge who was to try the case, Simonton, as a member of the public defender's staff, was advised by the prosecuting attorney to talk with Ash, although without definite purpose at that time. As the result of that conference and his representation of another man accused of complicity in the crime at a preliminary hearing, Simonton became as he says,

"* * * somewhat familiar with the factual situation, but I am not all familiar with Mr. Ash's defense in this matter, nor have I had a chance or opportunity to talk with any of the witnesses which he intends to have at the trial. * * * I have spent probably six hours, I suppose, and I don't feel that that is appropriate time for me to do a fair and competent job of his defense."

The defendant himself said,

"I had been trying to get a lawyer for a long time. Retainers are expensive. I have talked to lawyers before, and they have estimated thousands, twenty-five hundred and stuff. I have no way of obtaining that much money."

The trial judge, minutes before the trial was to begin, referred to previous advice to the defendant concerning right to have counsel appointed and that the trial would take place at the time set, and said:

"Therefore, his motion for continuance is denied for the reason that he was fully advised and has had an opportunity to engage counsel."

Nothing is said about the expressed inability of appointed counsel to try a case without preliminary investigation, consultation with his client and witnesses, or any of the things that assure a competent and proper development of the facts and law of the case in order that an intelligent and informed verdict and judgment be rendered.

The majority seem to feel that defendant's lack of prepared counsel is due to his

---

5. See also *People v. Kenzik*, 9 Ill.2d 204, 137 N.E.2d 270, 274–275 (1956), stating that the "cases uniformly hold that a defendant is entitled to a continuance for adequate preparation for his defense" and adding, "There is a general tendency by the courts to exercise a greater leniency and wider discretion where it is necessary to protect the rights of indigent persons accused of crime through appointment of counsel not of their own choosing."

own failure to request that counsel be appointed by the court and that he was using the counsel request as a ruse to delay action in his case so that it was proper for the trial judge to prevent this "cat and mouse" game.

I can only conclude that the majority consider it more important that the convenience of the court be observed than that criminal defendants be tried after time for careful preparation, but would further point out that the information was filed December 9, 1974, one day after the alleged offense. On that date defendant appeared before a justice of the peace and was advised of his right to counsel and to preliminary examination, which upon his request therefor was set for December 19, 1974. On December 19, without counsel, he waived such preliminary examination. The information was filed in the district court on December 31, 1974, he was arraigned before the district judge on January 6, 1975, and trial was set for February 11, 1975, a little over a month after the arraignment. The proceedings of that arraignment show that he was then thoroughly advised of his right to counsel and that one would be appointed for him if he could not obtain his own. They also show that the defendant was trying to obtain counsel but was having difficulty as related above. On January 28 he filed affidavit of prejudice against the judge of the district who had handled the arraignment, and the newly assigned judge on January 31 entered his order moving the trial back one day, to February 12.

I cannot agree with the majority's appraisal of defendant's conduct. While he may have been in a "situation of his own making" his lack of funds was a contributing factor to his lack of counsel, and his desire to have counsel of his own choice and at his own expense is surely not to be condemned. The 22 days between arraignment and request for appointed counsel hardly seem to me to demonstrate lack of diligence or a careless course of inattention. Nor does this seem to me unduly to disrupt the orderly, efficient, and speedy administration of justice.[6]

I concede that our district judges are busy and that a judge who has traveled the 118 miles from Rock Springs to Lander is inconvenienced by having to reset the trial for a later date, but I cannot see that this inconvenience is such as to require the denial of a continuance, certainly made in all good faith by the defendant's newly appointed counsel.

I do not deny that, generally, the "granting or refusing of a request for continuance of the trial is ordinarily a matter within the sound discretion of the trial court under the circumstances of each case." *Dreyer v. State,* 540 P.2d 541, 544 (Wyo.1975);[7] *Jackson v. State,* 533 P.2d 1, 5 (Wyo.1975); *Sims v. State,* 530 P.2d 1176, 1181 (Wyo.1975). This I think leads the majority to examine the proceedings in the present case (notwithstanding the previous profession that the effectiveness of counsel is not to be determined by the outcome of the case) and conclude that defendant has not been prejudiced wherefore

---

6. I cannot rid myself of the feeling that had retained counsel been brought into the scene for the first time on December 9 he might well have cringed at the prospect of trial on February 11.

7. Citing *United States v. Spoonhunter,* 476 F.2d 1050, 1056 (10 Cir. 1973), to the effect that discretion is not abused "in the absence of a clear showing of abuse resulting in manifest injustice." None of these cases involved the problem of newly appointed counsel being required to proceed to trial in minutes after his formal appointment and

within hours of his first unofficial contact with the defendant. See also *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964), where it is said: "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. * * * Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality."

there has been no manifest injustice. Perhaps in some cases the proof is so clear that even though defendant's counsel immediately requests time to prepare, it may be determined that no preparation would have helped. I do not think that that is the situation here. Simonton immediately advised the court that he considered he could not do a competent job in the time he had. Where such a claim is made and the court as well as the attorney is unaware of what the facts may be, how can it be said that justice is done by requiring the trial to proceed immediately?[8]

I do not say that Ash was not guilty as charged and found by the jury. I do not think that I must go to the extent of saying that a new trial with properly prepared counsel would result in a different verdict. To express it as simply as I can, I do not think that he had a fair trial because his counsel was not and could not be properly prepared for the trial. For that reason I would reverse the conviction and remand the cause for a new trial after a proper period for preparation.

ROSE, Justice, concurring in dissent of McCLINTOCK, J.

I fully concur with the learned dissent of my brother McClintock, except I would go further to hold the defendant to have been denied his constitutional rights of fair trial under the due process guarantee of the Federal and State Constitutions.

In my judgment, *no lawyer* can adequately prepare his client's defense in the time allotted to the defense attorney here in a way which would assure a defendant *effective assistance of counsel*. The right to such representation is guaranteed and this defendant did not have it.

Therefore, in addition to holding that the continuance should have been granted for all the reasons set out in Justice McClintock's dissent, I would have further held, under the authorities cited in the dissenting opinion, that the defendant was denied a fair trial, resulting in a violation of his constitutional rights of due process of law.

8. Merely as an illustration of possible ineffectiveness, I point out that the majority recognize that the case was disposed of on conflicting testimony. They say that other evidence in behalf of the defendant "would be largely cumulative or in the nature of attacking the credibility of the prosecution's witnesses." Carper, owner of the plastic site, was a principal and material witness against defendant being the only witness who placed

him within the plastic enclosure. His credibility and opportunity for accurate observation were most important but Simonton was forced to cross-examine him without preliminary conference or examination of the physical facts. We have no idea as to what other defenses or evidence might have been developed by Simonton had he had proper time for preparation. Is this not "manifest injustice"?